```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ALABAMA
                        SOUTHERN DIVISION

E.A. RENFROE & COMPANY, INC.,   }
                                }
     Plaintiff,                 }
                                }       CIVIL ACTION NO.
v.                              }       06-AR-1752-S
                                }
CORI RIGSBY, et al.,            }
                                }
     Defendants.                }
```

## MEMORANDUM OPINION

I will use the first person "I" in this opinion, rather than the traditional "the court", because it is I who am the subject of the two motions before me, motions that seek my disqualification in the above-entitled case. The issues have been well presented by excellent counsel, both in their briefs and in the oral argument held on December 14, 2007.

The first recusal motion was filed by non-parties, Richard F. Scruggs and The Scruggs Law Firm, P.A. ("Scruggs"), on November 25, 2007. It was followed three days later by a virtually identical motion filed by defendants, Cori Rigsby and Kerri Rigsby ("the Rigsbys"). Both motions invoke 28 U.S.C. §§ 455(a) and 455(b)(4). These two statutory provisions read in pertinent part as follows:

> (a) Any justice, judge, or magistrate judge of
>     the United States shall disqualify himself in
>     any proceeding in which his impartiality
>     might reasonably be questioned.
>
> (b) He shall also disqualify himself in the
>     following circumstances:

* * * *

 (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy, or in a party to the proceeding, or **any other interest that could be substantially affected by the outcome of the proceeding.**

(emphasis supplied).

  The facts upon which movants depend are largely undisputed. The most pertinent of the facts have existed since June 15, 2007, when I started a criminal contempt proceeding against Scruggs. On January 19, 2007, in response to a request from plaintiff, E.A. Renfroe & Company, Inc. ("Renfroe"), I ordered Scruggs and the Rigsbys to show cause why they should not be held in contempt for not having complied with the preliminary injunction I had issued on December 8, 2006.  After a protracted hearing, I issued an order on June 15, 2007, in which I found that Renfroe had not met its burden of proving by a preponderance of the evidence that Scruggs and the Rigsbys had failed to return all of the materials that the Rigsbys had stolen from Renfroe while employed by Renfroe.  For this reason, I declined to impose coercive sanctions for civil contempt, because such sanctions would have served no purpose.  But, I expressly stated that I "will leave the door open to a consideration of Renfroe's request for compensatory contempt sanctions after the Eleventh Circuit decides upon the validity of the preliminary injunction".  Then,

I expressly referred Scruggs to the United States Attorney for prosecution for criminal contempt based upon my conclusion that he had not complied with my mandatory injunction, and I expressly stated that I would appoint a special prosecutor in the event the United States Attorney declined to prosecute.  Following Rule 42(a)(2), F.R.Civ.P., to the letter, I could not have made my intentions clearer.  My subsequent actions have been entirely consistent with my orders of December 8, 2006, and June 15, 2007.  Nothing I have said or done since June 15, 2007, could have come as a surprise to Scruggs or the Rigsbys.

After appointing special prosecutors, I ordered that the criminal contempt matter be assigned to a judge other than myself, acknowledging that I should not preside over the trial of a criminal case that I had initiated.  The criminal contempt complaint against Scruggs thereupon was filed by the special prosecutors as an entirely separate case over which I have no control.

On August 31, 2007, I responded to a show cause order issued by the Eleventh Circuit based on a petition for mandamus filed by Scruggs seeking to have the criminal contempt case dismissed.  In my response I said, *inter alia*: "I am not involved in that case [the Scruggs criminal contempt case] but confess to having an interest in its outcome".  Although not alleged in either of their motions for disqualification, movants were operating under

the impression that the invoices being submitted to the United States by the special prosecutors are being submitted to me for approval.  At the oral hearing on December 14, 2007, I disabused movants of that impression.  The invoices of the special prosecutors are submitted by them directly to the Administrative Office of the United States Courts.  I never see them and have nothing to say about them.

It was not until after I entered my order of June 15, 2007, that I learned that the Rigsbys, represented by Scruggs, had, on April 26, 2006, months before I entered the preliminary injunction on December 8, 2006, filed a *qui tam* action against State Farm and Renfroe on behalf of the United States.  After June 15, 2007, I also learned that Scruggs has somehow agreed to indemnify the Rigsbys against all liability, including attorneys' fees, that they may incur in this case.  The full extent and timing of the relationship or relationships between Scruggs and the Rigsbys has not yet been determined, but the interests of both are so nearly identical in the context of this case that there is no basis for ruling differently on the two motions.

On August 31, 2007, when I responded to the Eleventh Circuit, I would have been foolish to deny that I have any interest whatsoever in the pending criminal contempt proceeding that began upon my finding of probable cause to believe that a contempt had been committed.  The key word, of course, is

"interest".  The question under 28 U.S.C. § 455(b)(4) is not whether I am "interested" in any sense whatsoever of the word "interest", but whether my "interest" is of the kind and character that mandates recusal.  I do not believe that my "interest" is disqualifying.  Section 455(b), in contrast to § 455(a), is a *per se* disqualification statute.  It is unequivocal, but it nevertheless requires some interpretation to fit differing circumstances.  In his comprehensive treatise on judicial disqualification, Richard Flamm explains the Congressional intent in § 455(b)(4) as follows:

> Pursuant to 28 U.S.C. §455(b)(4), a judge must disqualify himself if he knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy, or in a party to the proceeding, or any other interest that could be substantially affected by its outcome.  The statute may, therefore, be divided into two parts.  Pursuant to the first prong, a federal judge is subject to automatic disqualification upon the existence of certain financial interests.  **Pursuant to the second provision, the judge is disqualified by virtue of "any other interest" that is "substantially affected by the outcome of the proceeding."**
>
> Prior to 1974 disqualification for financial interest was mandated by §455 only when a judge's interest, or that of her relative within the third degree of relationship, was deemed to be "substantial."  The term was generally interpreted to mean that judges did not have to recuse from presiding over proceedings in which they possessed a financial interest unless that interest was so large that a reasonable person would think it likely to influence their decision.  The substantial interest requirement was, however, nebulous and subjective.
>
> In an attempt to cure this problem, as well as to

enhance the image of the courts as a whole, Congress opted to replace this "substantiality" text by a rigid per se rule.  Pursuant to the new rule, in order to disqualify a judge for nonfinancial interests under §455, "substantiality" must still be shown, but the threshold for financial interest disqualification was changed from a "substantial interest" to ownership of a legal or equitable interest, "however small" — a standard that would have reversed the results of a number of cases that had been decided prior to the 1974 amendments to §455.

Following adoption of the amendments to §455, some authorities misread the statute as continuing to call for disqualification only when a judge knew that she had a substantial financial interest.  But the meaning of the words "however small" would appear to be unequivocal.  Congress, moreover, clearly intended that whenever the impetus for a §455 motion was a judge's financial interest, the challenged judge was to have neither the duty nor the discretion to decide the matter based on the size of that interest. On the contrary, once any pecuniary interest is shown to exist in the subject matter of a controversy or in a party to a proceeding, a judge who has been challenged by a §455 motion is supposed to recuse herself, no matter how small that interest might happen to be.

The simple per se test prescribed by Congress has the advantage of avoiding the practical problems that often arose when a judge was called on to subjectively determine precisely how substantial a financial interest had to be before bias might reasonably be suspected, and most of the courts that have considered whether disqualification is warranted under the financial interest proscription since the 1974 amendments have scrupulously followed the statutory mandate.  But the "however small" standard has not been without its detractors.

Among other things, the standard has been criticized for its inflexibility, which can result in illogical and unjust consequences.  In particular, concerns have been voiced about the wisdom of insisting on disqualification on the basis of financial interests that are trivial — particularly in cases where the challenged judge presided over the matter for a significant period of time before the purportedly

disqualifying interest was raised.  The standard has also been criticized because of its possible chilling effect on judges.  While the drafters of the 1974 amendments had envisioned that a federal judge would be "free to invest" despite the "however small" limitation, as long as such investments were made in companies that were, "not likely to become litigants in his court," since most of the largest American corporations repeatedly appear in virtually every judicial district, a strict application of this statute would mean that federal judges and their families could not invest in any of the so-called "blue chip" securities that are traditionally considered to be among the best investments.  In light of these concerns, it has been argued that, at a minimum, there should be some meaningful exceptions to the financial interest proscription; yet, the "however small" rule remains in force.  This may not be such a bad thing, some suggest, because even though the rule may sometimes result in disqualification in cases in which the interest at issue may be too small to sway even the most mercenary of judges, occasional silly results may be an acceptable price to pay for a rule that is both straightforward in application and spares judges from having to make decisions under a standard that is uncertain and apt to be misunderstood.

While federal judges ordinarily must disqualify themselves whenever they possess any financial interest in a party or proceeding, they may be excepted from §455(b)(4)'s financial interest proscription, pursuant to 28 U.S.S. §455(d), when their interest is one involving ownership in a mutual or common investment fund that holds government securities; an office in an educational, religious, charitable, fraternal, or civic organization; or the proprietary interest of a policyholder in a mutual savings association.  The scant judicial attention that has been directed to §455(d)(4) has usually focused on the first of these exceptions, §455(d)(4)(I), which was designed to provide judges with a "safe harbor"; that is, a way of holding securities without having to make fine calculations as to the possible effect of a given proceeding on their own financial well-being.

Section 455(b)(4) was intended to absolutely preclude judges from presiding over cases in which they possessed financial or **other substantial interests**.

7

However, §455(b)(4) expressly provides that, for disqualification to be warranted under that provision, the judge must know that **he has an interest in some entity and that the subject entity is a party to the litigation before him.**  A federal judge is very likely to be aware of such an interest, partly because §455(c) requires that each judge inform himself about his personal and fiduciary financial interests, and to make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household, and partly because the Ethics in Government Act requires that judges file an annual Financial Disclosure Report detailing their stockholdings and other investments with the clerk of the court on which they sit.  Moreover, while the mere fact that a judge has filed such a report does not conclusively establish that he possesses the knowledge that is required for disqualification under §455(b)(4), the spirit of the legislation calling on judges to provide financial disclosure has generally been to resolve any doubts in favor or disqualification.  In any event, while §455(b)(4) explicitly requires knowledge of a disqualifying interest, §455(a) does not.  Thus, it is somewhat doubtful whether a judge's ignorance of an otherwise disqualifying financial interest could justify declining to grant a disqualification motion that has been predicated on his violation of the financial interest proscription.

Section 455(b)(4) mandates disqualification not only when a judge has a financial interest, but when he has "any other" interest.  Disqualification is required for financial interests without regard to how small they are, but **other types of interest generally only warrant disqualification when they are "substantial."  There is a certain amount of logic in the statutes' different treatment of financial and 'other' interests because, whereas a financial interest is apt to generate doubts about a judge's impartiality regardless of its amount, other interests may not be nearly so suspect.  The distinction between financial and other interests is problematic, however, in part because the term "any other interest" is not defined in §455.**

**Courts faced with the challenge of construing the term "any other interest" as used in §455(b)(4) have generally inferred that it is intended to encompass a**

8

> **judge's interest in the subject matter of the litigation or a party to it.  It has been suggested that whether this type of interest suffices to warrant judicial disqualification in a particular case should depend on the interaction of two variables — the remoteness of the interest and its extent or degree**. Thus, where the judge's interest strongly resembles a direct financial interest — as, for example, where the judge holds stock in a parent or subsidiary of a corporate party, rather than the party itself — any amount may be deemed to disqualify.  But **where the interest is less direct — as where a judge has an interest in an enterprise that is carrying on business with a party, rather than in the party itself — the judge's impartiality may reasonably be questioned only when the extent of that interest is itself substantial**. For example, in a case where a judge who held a large interest in a nonparty bank was called on it make rulings that might have had a detrimental effect on the banking industry of the state in which that bank was situated, but the potential effect was indirect and speculative, the judge's financial interest was held not to be in the subject matter in controversy.  A similar conclusion was reached where a judge held stock in certain energy companies that participated in the same program as the one before him in a case, but the judge did not have a direct economic of financial interest in the subject matter of the litigation before him.

Richard Flamm, *Judicial Disqualification: Recusal and Disqualification of Judges* § 24.4 (3d ed. 2007) (emphasis supplied) (footnotes omitted).

I do not agree with Renfroe's argument that *ejusdem generis*, a rule of statutory construction occasionally employed by the Eleventh Circuit, applies to § 455(b)(4), and thus limits the words "other interests" to those interests that are purely **financial**, although Renfroe's argument is not without merit.  No decided case has been cited by any party, and none has been found by me, in which an "interest" like the one that movants contend

requires my recusal, does, in fact, mandate recusal.  My "interest" in the outcome of the Scruggs criminal contempt action may not be as academic or as casual as the "interest" in that well publicized case a person who is interested in newsworthy matters might have, but my "interest" is surely not an "interest" that "**could be substantially affected by the outcome of the proceeding**".  In § 455(b)(4), Congress was attempting, however imperfectly, to address the possible effect that the outcome of **the proceeding in which a recusal is sought** could have upon the presiding judge's **other "interest"**.  I do not see how the outcome of the Renfroe case, over which I am presiding, could substantially affect the outcome of the Scruggs criminal contempt case, in which movants say I have an "interest".  The two cases are quite different, have different issues and different standards of proof.  The word "substantial" used in § 455(b)(4) means "real", in contrast to "illusory" or "speculative".  Any "interest" that I may have in the Scruggs criminal contempt case cannot be considered **substantial**, and any ruling I make in this case cannot **substantially** affect that case. There is, then, no basis for recusal under 28 U.S.C. § 455(b)(4).

Perhaps more worthy of discussion is movants' contention, made pursuant to 28 U.S.C. § 455(a), that a knowledgeable and reasonable person would conclude that I cannot be impartial in this case.  The language of 28 U.S.C. § 455(a) is manifestly

broad.  This places upon me the responsibility for evaluating my own qualification, resolving disputes of pertinent fact in favor of movants and being objective in my conclusions.  It is not an easy task.  It would be easy, and it is tempting, simply to grant the recusal motions and to pass this hard case to another judge.  This, in good conscience, I cannot do unless I can find a real basis for a third-party's reasonable perception of bias on my part.

I disagree with Renfroe when it argues that 28 U.S.C. § 455(f) has application here, and precludes the present motions as untimely.  Professor Moore's treatise does recognize such a principle, without referring to § 455(f):

> Although Section 455 imposes no specific time requirement, most circuit courts of appeal have held that a party's motion seeking disqualification under that statute must be timely filed when a judge does not voluntarily recuse himself or herself.  In general, one seeking disqualification must do so at the earliest possible moment after obtaining knowledge of the facts demonstrating the basis for disqualifying.

*Moore's Federal Practice* § 63.6[2] (3d ed. 2007) (footnotes omitted).  Because the Eleventh Circuit is not among the circuits referred to by Professor Moore, I will travel on the assumption that a motion for disqualification can be filed at any time, even long after all of  the facts upon which the disqualification motion is based have been known by the movant.  The time lag between the alleged appearance of disqualifying facts and the filing of the

11

motion is not dispositive.  It may, however, indicate the degree of confidence the movants have in their position.  To say the least, it is interesting that the promises I made on June 15, 2007, that movants now allege to constitute disqualifying facts, did not become sufficiently obvious to them to trigger motions for recusal until I had fulfilled my promises and until the Eleventh Circuit had affirmed my grant of the preliminary injunction.  In all likelihood, movants are no more capable of objectively judging the public perception of my qualifications to sit in this case than I am.

An excellent statement of the meaning and purpose of § 455(a) is found in Flamm's treatise, as follows:

> The mandate of §455(a) would appear to be clear — any United States justice, judge, or magistrate "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  The statute was designed to promote confidence in the judiciary, and the integrity of the judicial process, by commanding judges to avoid even the appearance of impropriety, but federal courts have not been entirely uniform in their interpretation of it.
>
> There are twin policies which bear on the application of the §455(a) standard.  **The first is that a judge, once having been assigned to a case, should not recuse on the basis of highly tenuous speculation.  A second and sometimes competing policy is that judges must not only be free of actual bias, but must appear to be so.**  Thus, §455(a) is not intended merely to protect litigants against any actual bias that may lurk in the mind of judges, but also against any bias that might reasonably be expected to be there, and to prevent distrust of the judicial system by the public at large.  This being the case, it is generally agreed that disqualification is warranted, in accordance with §455(a), **whenever the moving party can demonstrate that**

> **a reasonable person, who is fully informed of all the relevant facts and circumstances, would question the judge's impartiality.**
>
> Because §455 concerns not only fairness to individual litigants but the public's confidence in the judiciary as a whole, the standard for determining whether a judge should be disqualified under §455(a) is usually considered to be an objective one; and, thus, the fact that a judge does not actually harbor any bias against a party, and that he might be perfectly capable of discharging his duties impartially, is generally deemed to be irrelevant.
>
> Once a §455(a) violation has been found, the appropriate remedy remains to be decided.  While disqualification of the judge will often be ordered, there need not always be a draconian remedy for every §455(a) violation.  In determining the proper remedy, moreover, courts are expected to balance the risk of injustice to the parties in the particular case with the risk of undermining the public's confidence in the judicial process as a whole.
>
> While the §455(a) disqualification standard is a liberal one, the section is not to be read so strictly as to compel a judge to disqualify himself because he has learned a trivial fact, and the statute is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice.  It does not, moreover, permit recusal to be undertaken lightly.  On the contrary, while courts generally agree that §455(a) broadens the grounds for judicial disqualification, that section is not to be so broadly construed that it becomes in effect presumptive.  Were the threshold for recusal under §455(a) any lower, the very purpose of the provision — to foster public confidence in the impartiality of judicial proceedings — would be jeopardized.  Thus, §455(a) has generally not been construed as calling for disqualification on the basis of unsubstantiated, spurious, or loosely based charges of partiality.

Flamm, *supra*, § 24.2 (emphasis supplied) (footnotes omitted).

In order to deny movants' motions, it is not necessary that I find the motions frivolous or totally devoid of merit.  It is

only necessary that I find that that hypothetical, reasonable third-party, conversant with the material facts, would not perceive that I lack impartiality.  Movants, as advocates, are interested.  They cannot provide the objectivity necessary to answer the question which they want answered.  The question is not: "Do **litigants**, motivated by self-interest, have the right to **allege** that a reasonable, informed, disinterested person would perceive a lack of impartiality in a judge, something these movants apparently did not themselves perceive and act upon for months after knowing the facts?"  I can answer that question "Yes".  Movants are entirely within their rights to file their motions.  The question rather, is: "Would a **reasonable**, informed, disinterested party perceive a lack of impartiality in me"?  I can answer that question "No". Unless I reassigned the recusal question to another judge (and movants have asked me to order the recusal of all other judges of the Northern District of Alabama), I am the only person who bears the responsibility for judging what that theoretical, reasonable third-party would perceive about my partiality or impartiality.  Everybody is entitled to his or her opinion on the subject.  I have the movants' opinion.  It is not my opinion about my own fairness, or movants' opinion about my fairness, that controls my recusal decision.  It is my opinion about the perception that a reasonable, well-informed third-party would have.  I conclude that there is no rational

basis for such a perception.

An American Jurisprudence commentator, in the section entitled "Federal Courts", sheds some light on the subject, in the following language:

> It has often been said that the basis of a motion to disqualify under 28 USCS § 455(a) must be extrajudicial in character, arising, for example, out of the judge's background and associations.  **The judge's lack of impartiality must derive from something other than that which the judge learned by participating in the case; it cannot be in reaction to the evidence or the conduct of the parties that the judge observes in the course of the proceedings, and generally cannot result from a judge's adverse rulings in the particular case**.  The mere fact of an adverse ruling, or a negative determination as to credibility, does not in and of itself create an inference of lack of partiality.  Under normal circumstances, a judge is not disqualified by comments he or she makes during the course of judicial proceedings.  And mere procedural errors at trial do not indicate partiality.

32 AM.JUR. 2d *Federal Courts* § 75 (1995) (emphasis supplied) (footnotes omitted).

All of my actions that are alleged to have prompted the motions under consideration came as a result of my rulings **in this case**, rulings with which Scruggs and/or the Rigsbys obviously disagree. If the United States Attorney had decided to prosecute Scruggs, would movants be contending that I am disqualified?  The fact that I followed the prescribed procedure should not indicate bias against Scruggs, any more than my asking the United States Attorney to prosecute him.  As a practical matter, it was necessary for me to talk to the attorneys whom I appointed to

15

prosecute, just as it was logical that I talk to the United States Attorney as I tendered the prosecution to her.  This is not something which can fairly be said to create a perception of bias.

A litigant cannot himself create a basis for recusal by committing a sanctionable offense and suffering the consequences.  A judge cannot allow himself or herself, in fear of a recusal motion, to withhold an appropriate sanction that is commensurate with an offense.  Rule 11 and Rule 37, F.R.Civ.P., come to mind.  Judges are, of course, human beings, and therefore are not perfect.  But, if they are to fulfill their roles as arbiters of disputes in the society that has granted them that responsibility, they cannot constantly walk on eggshells.

One of the sanctions available to a judge in the administration of justice is the sanction of contempt, never a pleasant matter.  In twenty-five years on the bench, I have never before found probable cause for the prosecution of a party, or of a lawyer, for criminal contempt.  If a finding of such probable cause automatically mandates recusal under § 455(a), this case is as good a vehicle as any for establishing such a bright line recusal rule.

In order to give movants an opportunity to obtain an appellate review of my denial of their motions, I will not rule on other pending motions unless and until movants decline to seek

a reversal of my order, or the Eleventh Circuit affirms my order. Meanwhile, by separate order, I will deny the motions.

DONE this 4th day of January, 2008.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE