FILED

2008 Jun-05  PM 01:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

E.A. RENFROE & COMPANY, INC., )
                              )
        Plaintiff,            )
                              )        CIVIL ACTION NO.
v.                            )        06-AR-1752-S
                              )        08-mc-0908-S
CORI RIGSBY, et al.,          )
                              )        CONSOLIDATED
        Defendants.          )

### MEMORANDUM OPINION

One of the many motions before the court in this exceptional case is a renewed motion by plaintiff, E.A. Renfroe & Company, Inc. ("Renfroe") to find defendants, Cori Rigsby and Kerri Rigsby, ("the Rigsbys"), and non-parties, Richard Scruggs and The Scruggs Law Firm, P.A. ("Scruggs"), in civil contempt for the violation of this court's mandatory preliminary injunction entered on December 8, 2006, and to impose upon them a monetary sanction for the purpose of compensating or reimbursing Renfroe for the expense it incurred in obtaining compliance with the injunction. The court expressly awaited an appellate review of its preliminary injunction before coming to grips with this aspect of the civil contempt question. Rightly or wrongly, the court has already found no reason to impose coercive civil contempt sanctions. At the time it ruled on that question it believed, and on that belief found, that the enjoined parties, after some foot dragging and resistance, had finally complied. Again, rightly or wrongly, the court exonerated the Rigsbys from

any charge of criminal contempt, but appointed attorneys on behalf of the United States to follow up on the court's finding of probable cause to believe that Scruggs had committed a criminal contempt of court.  It was obvious then, and it is obvious now, that "beyond a reasonable doubt" is the burden required to prove a charge of criminal contempt in a jury trial, whereas the burden of proving civil contempt is by a preponderance, and is not a jury matter.

There is no purpose to be served in repeating everything this court has previously said relevant to the issue now being addressed, that is, except to the small extent that the court has changed its mind.  As long as a case is pending before a court, the court has the right *sua sponte* to alter its thinking, that is, unless its earlier findings have become the law-of-the-case by virtue of an interim appellate ruling that locks in the earlier findings.  This is not such a case.

The Rigsbys have filed a motion for summary judgment belatedly alleging lack of subject-matter jurisdiction and asserting that this case, in which Renfroe relied upon this court's diversity jurisdiction under 28 U.S.C. § 1332 by claiming that more than $75,000 is in controversy, no longer is supported by the requisite amount in controversy.  When subject-matter jurisdiction supposedly disappeared is a bit fuzzy.  If it occurred after Scruggs and the Rigsbys ignored the injunction,

2

the Rigsbys have no jurisdictional defense to Renfroe's motion

for sanctions, but if the alleged absence of $75,000 in

controversy occurred before the injunction was issued or before

any alleged non-compliance, a threshold question must be decided

before the court considers the motion for civil contempt.   The

court will deny the Rigsbys' Rule 56 jurisdictional motion for

the reasons presented in Renfroe's brief filed in reply to it.

There is still $75,000 in controversy.   The court will not write

an opinion on the subject, but will accompany its denial order

with a  certification pursuant to 28 U.S.C. § 1292(b) so that the

Rigsbys can attempt an appeal on the jurisdictional question if

they wish to do so.

Scruggs reiterates his contention that this court lacks

jurisdiction over him, both for the purpose of imposing the

injunction upon him in the first place and for the purpose of

enforcing the injunction as against him.   Scruggs argues that he

cannot be held in civil contempt because he not only was not

subject to the injunction, just as he contended in *United States*

*v. Scruggs*, the separate criminal case, but that he did not

violate the injunction as he also contended in *United States v.*

*Scruggs*.   Scruggs's contention that this court lacks subject-

matter and *in personam* jurisdiction over him has already been

addressed by this court, and this court will not repeat what it

said.   The court finds no reason to alter its finding that it had

3

the power to impose an injunction that, by its terms, reached

Scruggs (and persons similarly situated) and had jurisdiction to

enforce that injunction.  It is a truism that Scruggs could not

be in contempt of a court that had no jurisdiction over him.

Scruggs has not only preserved his earlier jurisdictional

argument, but now interposes as an alleged absolute defense, akin

to *res judicata*, the result in *United States v. Scruggs* in which

Honorable Roger Vinson, sitting on this court by special

designation, found that Scruggs was not subject to this court's

injunction and, if subject to it, did not violate it.  Scruggs

made the same arguments to Judge Vinson that he made earlier to

this court and that he reiterates now.  Scruggs contends that

Judge Vinson's dismissal of the criminal contempt charge acts as

a bar to any finding of civil contempt by this court.

The criminal contempt case was a case that was entirely

separate from this case.  Judge Vinson's opinion has no

adjudicative effect in this case and is not binding on this

court.  If this court had anticipated Judge Vinson's reasoning

and had agreed with it, this court would not have said what it

said on June 15, 2007.  Because Judge Vinson's opinion is not

published, and is not part of the record in this case except by

judicial notice, a copy of Judge Vinson's opinion is attached

hereto as Appendix "A".  Attached as Appendix "B" is a copy of

the motion filed by the United States for an extension of the

4

time within which to appeal from Judge Vinson's ruling. That motion was denied. This court agrees with much of what the motion of the United States said on the merits of the criminal case, but agrees that Judge Vinson appropriately denied it.

This court respectfully rejects Scruggs's and Judge Vinson's arguments. If their suggestions were followed in this case, they would end the inquiry. This court will articulate its disagreement with Judge Vinson only to the extent that the disagreement is pertinent to the consideration of the civil contempt question. Did a civil contempt by Scruggs and/or by the Rigsbys occur and, if it did, what should be the compensatory sanction?

Judge Vinson was certainly correct when he began his opinion in *United States v. Scruggs* by calling it a "most unusual case". The criminal action against Scruggs was the first and only case in the United States in which a judge sitting on the same court as a judge who had earlier initiated a charge of criminal contempt against a lawyer, dismissed that charge on motion of the accused lawyer without conducting an evidentiary hearing.

Judge Vinson is a fine, capable and conscientious judge. This court knows the seriousness with which he undertook consideration of *United States v. Scruggs*. This court's respectful disagreement with Judge Vinson would be obvious without a discussion of it, because, as said, if this court had

5

agreed with Judge Vinson, it would never have suggested a criminal contempt proceeding against Scruggs in the first place.

This court's first and most obvious area of disagreement with Judge Vinson arises from Judge Vinson's second ground for dismissing the criminal charge, namely, Scruggs's alleged right to claim protection from the reach of the injunction in the language that provided a right of access by "law enforcement officials" to materials stolen by the Rigsbys. In this case, Scruggs's "law enforcement official" of choice was Attorney General Hood, who was Scruggs's friend, associate and close confidant. If this avenue of escape was available to Scruggs, it was, by necessary inference, available also to the Rigsbys. Applying Judge Vinson's reasoning, if the Rigsbys had had possession of the illicitly acquired materials on December 8, 2006, the date of the injunction, they could, with impunity, have deposited the materials with General Hood, like Scruggs did, in reliance upon the supposed "law enforcement official" exception. On that date, the Rigsbys still had some stolen materials in their possession. They were not as clever as Scruggs was. Instead of hiding the materials with General Hood, they quickly endeavored, if not with complete dedication or success, to comply with the clear mandate of the injunction. They had no problem understanding it. Scruggs looked for a loophole, and, according to Judge Vinson, found it, that is, with the help of his friend,

6

a so-called "law enforcement official".

Judge Vinson gave Scruggs the benefit of what, this court believes, was a manufactured doubt about the meaning of the injunction. Under the totality of the bizarre circumstances, this court shares with the general public its perception that what Scruggs did was too cute by half.

The operative words of this court's preliminary injunction of December 8, 2006, are contained in its first paragraph, as follows:

In accordance with the above findings of fact and conclusions of law, and in compliance with Rule 65(d), F.R.Civ.P., the application of plaintiff, E.A. Renfroe & Company, Inc., for a preliminary injunction is GRANTED, and defendants, Cori Rigsby Moran and Kerri Rigsby, *and their agents, servants, employees, attorneys, and other persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise* (**with the express exception of law enforcement officials**) are hereby MANDATORILY ENJOINED to deliver forthwith to counsel for plaintiff all documents, whether originals or copies, of each document and tangible thing, in any form or medium, that either of defendants or anyone acting in conjunction with or at the request or instruction of either of them, downloaded, copied took or transferred from the premises, files, records or systems of Renfroe or of any of its clients, including, but not limited to State Farm Insurance Company and which refer or relate to any insurance claims involving damages caused or alleged to have been caused by Hurricane Katrina in the State of Mississippi.

(italics added; other emphasis in original).

The succeeding paragraph in the December 8 order in no way altered or subtracted from the above-quoted language. The exception for "law enforcement officials" only relieved from the

7

obligation to return documents any "law enforcement officials" who already were in possession of materials that had been stolen by the Rigsbys and who had been "in active concert or participation" with the Rigsbys. Only such "law enforcement officials" were beyond the reach of the injunction. This court does not know how it could have been any plainer.

In the subsequent order of June 15, 2007, this court found probable cause to believe that Scruggs had committed criminal contempt. This court there used the following language, with which Judge Vinson obviously disagreed:

Scruggs argues that he did not violate the injunction because the injunction, as he interprets it, contains an express carve-out for law enforcement. To read the preliminary injunction to permit Scruggs to deliver the documents to Hood rather than to counsel for Renfroe is such a strained construction and so contrary to the injunction's clear terms as to lack any credibility whatsoever. **It unduly blurs the distinction between the injunction's first and second paragraphs. It deems the words "disclose," "use," and "misappropriate" in the second paragraph to be synonymous with the word "deliver", even though "deliver" is the word that the court carefully chose for the first paragraph.**

(emphasis added).

Greg Hawley, the attorney who represented the Rigsbys at the time the injunction was issued and at the time the order to show cause was issued (but who understandably no longer represents them), was being paid by Scruggs, although at the time this court did not know it. Hawley had no trouble understanding this court's injunctive order. As an officer of the court, as well as

8

an accomplished advocate for his named clients, he promptly asked Scruggs to honor the injunction by returning the stolen materials, and he instructed the Rigsbys to deliver to Renfroe's counsel all materials in their actual possession. There may be a difference between "ask" and "demand". Hawley never suggested to anybody that stolen materials could be hidden from Renfroe's counsel by the device of delivering them to some "law enforcement official", much less to a so-called "law enforcement official" who already possessed the materials and who was a Scruggs confederate. Employing Judge Vinson's reasoning, any "law enforcement official" who was willing to take delivery of the stolen materials, even though having no need for them and, instead, for the avowed purpose of avoiding their delivery to Renfroe's counsel, could, with impunity, frustrate compliance with the injunction. If Judge Vinson was correct, General Hood's belated return of his second copy of the materials was a mistake. According to Judge Vinson, Scruggs had no obligation whatsoever to honor the injunction or to accede to the requests from the Rigsbys, although the Rigsbys were his "clients", his "employees", his "consultants", his "witnesses", and his "joint-venturers". Scruggs and the Rigsbys were as "joined-at-the-hip" as any set of Siamese twins.

Last but not least, this court disagrees with Judge Vinson's gratuitous conclusion that General Hood, under these

9

circumstances, was a "law enforcement official".   In *United States v. Scruggs*, a jury could easily have found beyond a reasonable doubt (as this court now finds by a preponderance of the evidence) that, in context, General Hood was not a *bona fide* "law enforcement official", but rather was a co-conspirator with, and an aider and abetter of, Scruggs.  If Judge Vinson was correct in his reading of this court's injunction, this court should never have tried to force Scruggs to deliver possession of the materials stolen by his joint-venturers.  The Rigsbys earlier pled successfully that they did not have possession of the materials and thus had complied.  However, they undoubtedly knew that General Hood had two copies.  Did General Hood need his extra copy in order to fulfill his "law enforcement" duties?  The question answers itself.

Judge Vinson did not dispute the territorial reach of the injunction of December 8, 2006.  Instead, he found a lack of jurisdiction over Scruggs on the ground that Scruggs was not the attorney-of-record for the Rigsbys in the *Renfroe* case.  Judge Vinson never conducted an evidentiary hearing to explore the dimensions of the relationship between Scruggs and the Rigsbys. At page 7 of this court's opinion of June 15, 2007, this court found on clear evidence:

> There is no dispute about the fact that Scruggs was an attorney for the Rigsbys in relation to the subject of the documents when the injunction was issued.

10

Judge Vinson did not dispute this finding based on any evidence
beyond what this court had received and considered. Relying on
the fact that Scruggs was not the attorney-of-record, Judge
Vinson ignored this court's findings that Scruggs was an "agent"
of the Rigsbys, and was a "person in active concert or
participation" with the Rigsbys. Without conducting an
evidentiary hearing, Judge Vinson concluded that Scruggs was not
in active concert with the Rigsbys at the time he became aware of
the injunction and at the time he initiated the contact with
General Hood that resulted in the parking of the materials with
General Hood after General Hood's requested request.

If Judge Vinson was correct, and if the Rigsbys had been in
possession of the materials when the injunction was issued, and
instead of delivering them to Renfroe's counsel, had delivered
them to John Doe, a non-lawyer co-conspirator who happened to be
an off-duty policeman with a badge (a "law enforcement
official"), with the sole purpose of hiding the materials from
Renfroe, John Doe would not have been subject to the injunction,
and nobody could have been held in contempt. After all, John Doe
would not have been an attorney-of-record, and he would be just
as *bona fide* a "law enforcement official" as General Hood was.
If Judge Vinson was correct, both this court and the Eleventh
Circuit have wasted a lot of time. As a practical matter, and as
a matter of good sense, if Scruggs was not subject to the

11

injunction, nobody was.

To reiterate, there was more than one relationship between Scruggs and the Rigsbys. Judge Vinson was, of course, correct in saying that Scruggs was not technically the Rigsbys' attorney-of-record in the *Renfroe* case, but Scruggs was paying for the Rigsbys' lawyers in the *Renfroe* case, and was in effective control. When Judge Vinson concluded that Scruggs was not "legally identified" with the Rigsbys, Judge Vinson was employing a term of legal art, as well as making a finding of fact without evidence. This court again wonders how a person could be any more "identified with" the Rigsbys than Scruggs was. Scruggs was the *alter ego* of the Rigsbys, and the Rigsbys were the *alter egos* of Scruggs. They could not have been any more closely "identified" without obtaining a marriage license. They were in bed together.

In February 2006, if not before, Scruggs had established his confidential relationship with the Rigsbys. In April of 2006, Scruggs filed the *qui tam* suit for the Rigsbys. By that time the Rigsbys were not only Scruggs's clients, but were his "witnesses", both in the *qui tam* and in private lawsuits against State Farm. Judge Vinson's statement that the Rigsbys did not become Scruggs's "consultants" until July 2006, is consistent with what this court earlier believed, but both this court and Judge Vinson were wrong as to the date when the employment

12

relationship between Scruggs and the Rigsbys came into being.
Subsequent events have proven otherwise.  Scruggs and the Rigsbys
had an identity of interest from February 2006 until today.  The
Rigsbys were effectively employed by Scruggs in February, 2006.
In February 2006, there was a mutual commitment to a joint-
venture in which Scruggs was as much the Rigsbys agent as the
Rigsbys were his agents.  Without an evidentiary hearing, Judge
Vinson concluded that Scruggs was not "in active concert with"
the Rigsbys, was not "legally identified with" them, and was not
their "aider and abetter".  This court apologizes for not using
the term "aider and abetter" in its opinion of June 15, 2007.  It
was the only descriptive term it left out.

Rejecting the legitimacy of the means employed by Scruggs to
escape the criminal contempt charge, and disagreeing with the
Rigsbys' challenge to subject-matter jurisdiction, this court now
turns to Renfroe's renewed request for a compensatory award for
civil contempt against the Rigsbys and Scruggs.

In defense of Renfroe's motion, the Rigsbys say at page 10
of their response:

Cori Rigsby did not know that lawyers outside the
Scruggs Katrina Group had copies of the documents.

Ostensibly, Cori was speaking for Kerri, as well as for herself.
Or was she?  Both of the Rigsbys presumably knew in April 2006,
when they became the plaintiffs in the False Claims Act case,
that they were represented by lawyers who were not members of the

Scruggs Katrina Group. They also presumably knew that their
lawyers, including those not in the Scruggs Katrina Group, had
possession of the evidence those lawyers delivered to the United
States Attorney when the suit was filed, as required by the False
Claims Act.

At page 12 of their response, the Rigsbys assert:

> [T]he Court and the parties now know that **the Rigsbys
> obtained the documents that are the subject of the
> injunction to provide as evidence to the Department of
> Justice as required by the False Claims Act and to use
> as evidence in support of a False Claims Act claim** that
> was filed in federal court in Mississippi in April
> 2006.

(emphasis added). Although the Rigsbys acknowledge that the
preliminary injunction was upheld on appeal to the Eleventh
Circuit, which is a court, like this one, that could have been
advised of the existence of the *qui tam* action, but was not, the
Rigsbys now attack the injunction as somehow precluded by the
pendency of the False Claim Act case. Do they really argue that
after filing the *qui tam* case, the Rigsbys were authorized by the
False Claim Act and obligated to the taxpayers to steal Renfroe's
records two months after the *qui tam* case was filed? There has
already been a deluge of litigation in Mississippi dealing with
the propriety of a lawyer using his clients to steal documents
from their mutual opponent. The above-quoted language from the
Rigsbys' response suggests something at which the Department of
Justice has never hinted, namely, that it encouraged the Rigsbys

14

to conduct their clandestine "data dump" in June 2006.   What
would have been the reaction of the United States Attorney if he
had known that the evidence delivered to him by the *relators'*
lawyers sometime after the data dump had been stolen?   Thus far,
the stolen evidence has not induced the United States to
intervene in the *qui tam* case.

     As this court stated in its opinion of June 15, 2007, the
reason for not imposing coercive sanctions on the Rigsbys and on
Scruggs was the court's understanding that all stolen papers had,
to the extent practicable, been returned.   There was, therefore,
no reason to impose coercive sanctions.   It is now clear to the
court that both the Rigsbys and Scruggs, as aiders and abetters
of each other, did not comply immediately and fully, and
therefore proximately caused expenses to be incurred by Renfroe
in order to obtain whatever degree of compliance that has been
obtained.

     It turns out that, in addition to the documents that were
returned, the Rigsbys copied State Farm documents using a list of
Scruggs's clients, and that these documents were segregated by
them in a plastic boot box.   They were never mentioned by the
Rigsbys until recently, and they have never been returned,
although copies may be randomly scattered among the papers
returned to Renfroe's counsel and now stored under lock-and-key
in the court's chambers.   The Rigsbys admit that they did not

                                15

return the boot box documents, but say they do not have the box and do not know where it is. This court is tempted to deduce a location for the boot box documents, but will proceed on the assumption, at this late stage, that the boot box and its contents will never be found. The court agrees with Renfroe that the boot box was clearly within the purview of the injunction. Its non-return and disappearance is not only a disappointment to Renfroe, but it is a disappointment to the court.

Scruggs and the Rigsbys intentionally made Renfroe and its lawyers work hard to obtain compliance with this court's injunction. Without the dogged determination of Renfroe's lawyers, no materials stolen by the Rigsbys would have ever been recovered. The purpose of compensatory sanctions for such conduct could not be realized without a granting of Renfroe's motion.

This court analogizes these circumstances to a tort claim against joint tortfeasors, in which the degree of fault as between the defendants is different, but makes no difference. There is no proration of damages as between tortfeasors. In the case before the court, Scruggs may have been more contumacious than the Rigsbys, but they were in it together. The fact that the Rigsbys may have asked Scruggs, their lawyer, their employer, and their mentor, to comply does not excuse their non-compliance insofar as a joint violation and compensatory sanctions are

16

concerned. In considering criminal contempt, there is an easily recognized distinction between Scruggs and the Rigsbys, and even if there weren't such a distinction, this court could not initiate a criminal contempt charge against the Rigsbys after Scruggs has been fully exonerated of criminal contempt. But, a civil contempt charge against joint venturers, one of whom may be more contumacious than the other, is a different matter.

This court feels less reluctance to impose sanctions on the Rigsbys than it otherwise would feel because Scruggs is obligated as indemnitor to pay all monetary damages assessed in this case against the Rigsbys. When and if Scruggs pays the joint obligation that the court will hereinafter impose, the joint obligation will be discharged.

Renfroe seeks $94,219.75 in attorneys fees and expenses that it says were occasioned by its efforts to enforce compliance with the injunction. From examining the papers attached to Renfroe's motion, the court concludes that not every item of expense and not every lawyer-hour spent, is fairly attributable to Renfroe's efforts to obtain compliance. The court readily understands the difficulty in keeping time records that later have to be compartmentalized into non-compensable items and compensable items. Rather than to refer the winnowing process to a magistrate judge, and because the court can use its personal experience in analyzing the Rigsbys' and Scruggs's criticisms of

17

Renfroe's request, the court finds that a reasonable number of lawyer-hours multiplied by a reasonable hourly rate, results in a figure of $65,000, which, by separate order, will be awarded against both the Rigsbys and Scruggs as a compensatory sanction.

DONE this ___5th___ day of June, 2008.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

# APPENDIX "A"

**FILED**
2008 Feb-29 PM 02:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

v.                                                    Case No.: 2:07-cr-325/RV

RICHARD F. SCRUGGS and
THE SCRUGGS LAW FIRM, P.A.,
_____/

## ORDER

This is a most unusual case. Richard Scruggs and his law firm, The Scruggs
Law Firm, P.A. (together, "Scruggs"), have been charged with criminal contempt
arising out of a civil case pending in the United States District Court for the
Northern District of Alabama, *E.A. Renfroe & Co., Inc. v. Rigsby*, 2:06-CV-1752.
Scruggs is being prosecuted on this charge by special prosecutors appointed by the
district judge presiding over the *Renfroe* case, Judge William M. Acker. There are
several motions currently pending. However, this order deals only with Scruggs's
motion to dismiss, which is contained within his response to the summons, notice,
and order to show cause. Doc. 7.

## I.   BACKGROUND

The following facts are either undisputed, or set out by the Eleventh Circuit
in its opinion in the *Renfroe* appeal. *See* Opinion, dated August 24, 2007, attached
to Doc. 8, Ex. G ("11th Cir. Op.").[1]

Scruggs is a Mississippi attorney who has represented hundreds of Hurricane
Katrina victims in cases against their respective insurance companies. E.A. Renfroe
& Company ("Renfroe") is a corporation headquartered in Birmingham, Alabama,
whose business includes supplying insurance companies with claims adjusters in

_____

[1] References to the docket in this case, as indicated above, are in the format "Doc.
XX." References to the docket in the underlying civil case will be in the format
"*Renfroe* Doc. YY."

Case 2:06-cv-01752-SLB   Document 338   Filed 06/05/08   Page 21 of 65
Case 2:07-cr-00325-CRV   Document 34      Filed 02/29/2008   Page 2 of 25

*Page 2 of 25*

the aftermath of natural disasters. Cori Rigsby Moran and Kerri Rigsby are sisters and former Renfroe insurance adjusters who began working for the company in 1998. In 2005, Renfroe deployed the sisters to the Mississippi Gulf Coast to assist one of its largest clients, State Farm Insurance Company ("State Farm"), in handling Hurricane Katrina-related insurance claims. While on this assignment, the Rigsbys came to believe that State Farm was engaged in fraudulent and illegal activities involving the claims. The sisters copied thousands of State Farm claim-related documents and shared them in "batches" with the following individuals and entities: (1) Scruggs, who had been retained by them as their attorney (for matters predating the *Renfroe* case) in February 2006; (2) the United States Attorney for the Southern District of Mississippi and the Federal Bureau of Investigation; (3) the ABC News show "20/20," which in late August 2006 aired a segment highlighting the fraud allegations against State Farm; and (4) the Mississippi Attorney General, Jim Hood. It is undisputed that the sisters had transferred the documents to these other recipients and that the Rigsbys themselves no longer had the documents in their possession by the end of July 2006. *See* Doc. 11 at 5; *Renfroe* Doc. 145 at 3-4.

Nevertheless, on September 1, 2006, Renfroe filed suit against the Rigsbys, seeking to have the documents returned, damages, and injunctive relief. Scruggs was not named as a party in the *Renfroe* case. He had employed the sisters as insurance consultants beginning on July 1, 2006, and he represented them in a "whistleblower" case against State Farm and related litigation involving the documents, but he did not represent them, or make an appearance, in the *Renfroe* case. The Rigsbys were represented in the *Renfroe* case by attorneys from Washington, D.C., and Alabama.[2] After an evidentiary hearing in the *Renfroe* case,

---

[2] The special prosecutors contend that these attorneys were "presumably" paid by Scruggs. Even if true, this fact does not alter how the case must be decided.

Case 2:06-cv-01752-SLB   Document 338   Filed 06/05/08   Page 22 of 65
Case 2:07-cr-00325-CRV   Document 34     Filed 02/29/2008   Page 3 of 25

Page 3 of 25

Judge Acker entered, on December 8, 2006, a preliminary injunction providing,
*inter alia*, that:

> . . . [D]efendants, Cori Rigsby Moran and Kerri Rigsby,
> and their agents, servants, employees, attorneys, and
> other persons in active concert or participation with them
> who receive actual notice of this order by personal
> service or otherwise **(with the express exception of law
> enforcement officials)** are hereby MANDATORILY
> ENJOINED to deliver forthwith to counsel for plaintiff all
> [documents at issue], whether originals or copies . . . .
>
> Defendants and their agents, servants, employees,
> attorneys, and other persons in active concert or
> participation with them who receive actual notice of this
> order by personal service or otherwise, are further
> ENJOINED not to further disclose, use or misappropriate
> any material described in the preceding paragraph unless
> to law enforcement officials at their request.

*Renfroe* Doc. 60 (emphasis in the original). Scruggs was not specifically named in
the injunction, even though Renfroe was aware that he had the documents in his
possession months before the injunction was entered. *See Renfroe* Doc. 14 at ¶ 22
(stating in their Answer filed more than two months before the injunction that the
Rigsbys had "provided" the documents to Scruggs).[3]

In light of the criminal investigation into the fraud claims against State Farm,
the district court exempted from the scope of the injunction any disclosure of the
documents to, and the use by, law enforcement officials. The Eleventh Circuit
referenced this "law enforcement exception" three times in its opinion in the
*Renfroe* appeal. 11th Cir. Op. at 4, 10; *see also id.* at 12 ("As we have said twice,

---

[3] It is possible that Scruggs was not added as a defendant in the case, or otherwise
named in the injunction, because Renfroe believed that he would be bound thereby
since the injunction applied to the Rigsbys and their "agents" and "attorneys."
Importantly, I again note that Scruggs represented the Rigsbys in other litigation,
but not in the *Renfroe* case.

Case 2:06-cv-01752-SLB  Document 338  Filed 06/05/08  Page 23 of 65
Case 2:07-cr-00325-CRV   Document 34      Filed 02/29/2008    Page 4 of 25

*Page 4 of 25*

the injunction specifically allows disclosure of the documents to 'law enforcement officials.'"). The district court also entered a protective order that required counsel for Renfroe to keep the documents in their sole possession "under lock and key." *Renfroe* Doc. 60 at 14-15. They could not share or disclose the material to any person or entity, including their client Renfroe, "without first obtaining the express written approval of [the district] court." *Id.* at 15.

Scruggs received notice of the injunction on the afternoon it was entered, Friday, December 8, 2006. Apparently believing that he was subject to the injunction, he called Mississippi Attorney General Hood that evening, and again over the weekend, to discuss what to do with the documents. Scruggs claims that he and Hood were concerned that if the documents were delivered to Renfroe's counsel, then they might, in turn, be disclosed to Renfroe and State Farm, which allegedly could then prejudice the grand jury investigation of State Farm. At some point during their discussions, Hood requested that the documents be sent to him (even though he already had copies in his possession) instead of being sent to Renfroe's attorney. It was agreed between them that the Attorney General's Office would later draft a letter formally requesting the documents.[4]

The injunction became effective on Monday, December 11, 2006, when Renfroe posted a bond with the court. Based on Hood's prior oral request and his assurance that he would confirm that request in writing, Scruggs sent the documents to the Attorney General the following day, December 12th. It was not until later that day that Hood's assistant, Courtney A. Schloemer, sent the expected request via e-mail to Scruggs. The e-mail stated that Hood's office was

---

[4] It is unclear who initially suggested that the documents be sent to Hood. *See Renfroe* Doc. 130 at 197-98. I will assume for purposes of this order, as the special prosecutors have urged, and as Judge Acker had implied, that it was Scruggs's idea and that he, in effect, asked Hood to "request" the documents.

Case 2:06-cv-01752-SLB  Document 338  Filed 06/05/08  Page 24 of 65
Case 2:07-cr-00325-CRV  Document 34  Filed 02/29/2008  Page 5 of 25

*Page 5 of  25*

"not comfortable that the protective measures put in place by the Court will be
effective in keeping these documents out of the grasp of State Farm." *See Renfroe*
Doc. 79, Ex. 2. As they had discussed on Friday and over the weekend, Hood
asked Scruggs to provide the Attorney General's Office "with your copy of the
documents from Cori and Kerri, and we can return them to you at a time when our
investigation is not in jeopardy by the possibility of disclosure of those documents
to the wrong party." *Id.* A few hours later, Schloemer sent a second e-mail, this
one stating that perhaps her previous request was "hasty" and suggesting that
Scruggs first obtain permission from Judge Acker before sending the documents.
*See Renfroe* Doc. 130 at 204. Obviously, Scruggs did not do so because the
documents had already been sent. Nor did he attempt to retrieve them from the
Attorney General.

Significantly, neither the Rigsbys nor their counsel in the *Renfroe* case knew
anything about the Scruggs-Hood conversation or agreement to send the
documents to the Attorney General's Office. Indeed, the special prosecutors now
contend --- as Judge Acker previously intimated, *see Renfroe* Doc. 145 at 8, 23-24
--- that Scruggs had acted on his own and for his own purposes. Doc. 11, Ex. 1 at
¶ 14 (contending that Scruggs talked with the Rigsbys's attorney, Greg Hawley,
between December 8th [when the injunction was entered] and December 12th
[when the documents were sent to Hood], but "Scruggs did not tell Hawley about
his discussion with the Attorney General of Mississippi or the plan to ship the
documents to that office"); Doc. 11 at 16 (contending that "the evidence shows
Scruggs knew about [the injunction] before the Rigsbys themselves and having
been entrusted with the documents, decided what would be done with them
without first advising his clients"); *see id.* at 2-3, 6, 9 n.3 (contending, *inter alia*,
that "the documents were of value to [*Scruggs*];" he believed that "compliance
with the injunction would be contrary to *his* economic interests;" he acted in order

Case 2:06-cv-01752-SLB   Document 338   Filed 06/05/08   Page 25 of 65
Case 2:07-cr-00325-CRV   Document 34      Filed 02/29/2008   Page 6 of 25


Page 6 of 25

to "further *his* interests;" he "put *self*-interest above compliance with the court;" and he acted to further *"[his]* commercial business endeavors") (emphasis added). The Rigsbys, in other words, did not have anything to do with Scruggs sending the documents to Attorney General Hood. Cori Rigsby testified at a hearing before Judge Acker that Scruggs "had free range to do whatever he wanted to do with [the documents.] I considered those his documents at that point." *See Renfroe* Doc. 130 at 115; *id.* at 118 (again stating that after she gave the documents to Scruggs "I considered those his documents"). Even though she may have believed that the documents belonged to Scruggs, Cori also felt that she had an obligation under the injunction to get the documents back and send them to counsel for Renfroe. Thus, she testified --- and Judge Acker found, *see Renfroe* Doc. 145 at 8-9, 24 --- that she and her sister made attempts to retrieve the documents from Scruggs and Hood in order to comply with the injunction, but to no avail. *See, e.g., Renfroe* Doc. 130 at 74-75, 79-81. Their attorney in the *Renfroe* case made similar unsuccessful attempts. *See id.* at 262-64.

The next month, on January 5, 2007, Renfroe filed a motion for an order to show cause for contempt of court, arguing that Scruggs had violated the terms of the injunction by sending the documents to Attorney General Hood. *Renfroe* Doc. 68. The district court granted the motion and ordered Scruggs to show cause why he should not be held in contempt. *Renfroe* Doc. 88. Later that month, on January 23, 2007, Scruggs announced that he reached a global settlement agreement with State Farm in a large Hurricane Katrina-related class action in Mississippi, *Woullard, et al. v. State Farm*, 1:06-CV-1057. Ten days later, Attorney General Hood returned the subject documents to Renfroe's attorney. *Renfroe* Doc. 92 at 3 n.2.

The district court held a hearing on the possibility of a contempt charge on March 19-20, 2007. By Memorandum Opinion and Order, dated June 15, 2007 ("the June 15th Order"), Judge Acker recognized that the State Farm documents

Case 2:06-cv-01752-SLB   Document 338   Filed 06/05/08   Page 26 of 65
Case 2:07-cr-00325-CRV   Document 34      Filed 02/29/2008   Page 7 of 25

*Page 7 of 25*

were no longer in the possession of either Scruggs or Hood, and he declined to impose civil contempt against the Rigsbys and Scruggs. *See Renfroe* Doc. 145. He also declined to refer the Rigsbys for criminal contempt prosecution. In declining to refer the Rigsbys for criminal prosecution, Judge Acker stated that the sisters "certainly were not the brains of the injunction-avoidance schemes" and, moreover, "[a]fter they gave the documents to Scruggs they were, in effect, controlled by him." *Id.* at 23-24. Therefore, the Rigsbys could be held in criminal contempt "only if held vicariously liable as agents or confederates of Scruggs." *Id.* at 23. Judge Acker ultimately concluded that "the court does not believe that there is evidence to prove that either of [the sisters] engaged in conduct that constitutes a basis for punitive or criminal sanctions" because they "did not have possession of the documents on or after December 8, 2006, and this should preclude a jury finding that they knowingly or willfully violated the terms of the preliminary injunction." *Id.* at 23-24.

However, Judge Acker did refer Scruggs for criminal contempt prosecution. In doing so, he was skeptical of the claim that Scruggs and Hood acted because they were concerned that compliance might thwart the criminal investigation of State Farm. Judge Acker suggested that Scruggs and Hood wanted to hold on to the documents in order to coerce State Farm into settling Hurricane Katrina cases that had been filed by Scruggs. *See id.* at 21-22 ("[T]he court does not understand how [disclosure of the documents to Renfroe or State Farm] would have jeopardized a criminal investigation of State Farm. Unless, as Renfroe has hinted at, Scruggs and Hood had teamed up to bully State Farm into civil and criminal settlements by telling State Farm that they had 15,000 inculpatory documents but not allowing State Farm to see them, the court does not see why it was worth it to Scruggs to risk contempt."). Judge Acker referred the case for criminal prosecution to Alice H. Martin, the United States Attorney for the Northern District of Alabama.

*Case No.: 2:07-cr-325/RV*

Case 2:06-cv-01752-SLB   Document 338   Filed 06/05/08   Page 27 of 65
Case 2:07-cr-00325-CRV    Document 34    Filed 02/29/2008    Page 8 of 25

*Page 8 of 25*

While she was considering whether to take the case, Hood wrote a letter to Martin, claiming that Scruggs was his "confidential informant" and urging her not to prosecute. Shortly thereafter, Martin wrote to Judge Acker and stated that after taking a "dispassionate assessment" of the case, and after a "serious and thorough review of the facts surrounding this indirect criminal contempt, I respectfully decline to prosecute Mr. Scruggs or his firm." *See Renfroe* Doc. 147. She did not further offer any explanation for why she declined to prosecute.

That did not end the matter. Pursuant to Rule 42(a) of the Federal Rules of Criminal Procedure, Judge Acker then appointed two special prosecutors, and later a third, and directed that they prepare and file a charging document. On August 13, 2007, Judge Acker amended the June 15th Order insofar as it purported to exonerate the Rigsbys from criminal contempt. *Renfroe* Doc. 150. This was done after it was discovered that the Rigsbys and Scruggs had filed a *qui tam* case against State Farm in April 2006 (the *qui tam* case had, until August 1, 2007, been kept under seal). In light of this newly discovered fact, Judge Acker stated that he was not "sure of the exact relationship that existed between the Rigsbys, on the one hand, and Scruggs, on the other" when the documents were given to Scruggs or when the injunction was issued. *Id.* at 1-2. The court held that the question of criminal contempt "remains open" and "[f]urther exploration into the subject will be required before a final determination of whether or not probable cause for criminal contempt by the Rigsbys exists." *Id.* at 2.[5]

On August 21, 2007, Judge Acker and the three special prosecutors filed an instrument charging Scruggs with contempt of court. Doc. 1. Judge Acker and the

_____

[5] Now more than six months later, the Rigsby sisters have not been charged with criminal contempt, nor does it appear from the special prosecutors' arguments that they will be.

Case 2:06-cv-01752-SLB Document 338 Filed 06/05/08 Page 28 of 65
Case 2:07-cr-00325-CRV Document 34 Filed 02/29/2008 Page 9 of 25

*Page 9 of 25*

special prosecutors alleged that there was probable cause to believe that Scruggs and his firm "committed acts constituting a criminal contempt of this Court, that is, each wilfully violated and disobeyed [the injunction] by causing materials subject to the order and in their possession to be delivered to a third party with the specific intent of preventing said materials from being delivered to counsel for the plaintiff."

## II. DISCUSSION

There are several motions now pending before the court, the most significant of which is Scruggs's motion to dismiss. Indeed, all the other motions will be moot if the case is dismissed, so this order will consider only the issue of dismissal. Scruggs advances four arguments in support of his motion. He argues first that he is innocent as a matter of law because giving the documents to Attorney General Hood fell within the "law enforcement exception" to the injunction. He argues second that he was not subject to the injunction, and, consequently, this court has no jurisdiction over him. He argues third and fourth that the appointment of the special prosecutors, and Judge Acker's alleged supervision and continued control over the case, violates separation of powers principles and principles of disinterest. Because it appears the first two arguments are dispositive, I need not, and do not, consider the last two. I will address the first two arguments below, in reverse order. Before doing so, I must make some initial observations.[6]

_____

[6] Although it is not necessary that I reach Scruggs's third and fourth arguments, I note that the Supreme Court has authorized the use of special prosecutors for criminal contempt. *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 107 S. Ct. 2124, 95 L. Ed. 2d 740 (1987). Scruggs attempts to get mileage out of the fact that the U.S. Attorney declined to prosecute, but that is exactly what *Young* and Rule 42 contemplate. *See id.* at 801 ("[A] court ordinarily should first request the appropriate prosecuting authority to prosecute contempt actions, and should appoint a private prosecutor only if that request is denied."); *see also* Fed. R. Crim. P. 42(a)(2) ("The court must request that the contempt be prosecuted by an attorney for the government. . . . If the government declines the request, the court must appoint another attorney to prosecute the contempt.").

Judge Acker was faced with a very difficult and unusual situation, and I am sympathetic to what he attempted to do. He entered an order and binding injunction in the *Renfroe* case, only to have the defendants' attorney from separate (albeit related) litigation circumvent that order with help from an ally and friend in an important political law enforcement position. As will be discussed in Section II.B *infra*, there is a cloud of impropriety surrounding what Scruggs did and the nature of his eleventh hour agreement with Hood. It is certainly understandable that Judge Acker would attempt to hold him accountable. Perhaps there are ethical issues that should be examined. But, the question is not whether Scruggs acted ethically; the question is whether he can be held criminally responsible in a contempt proceeding.

The analysis must begin by recognizing that there are two different types of contempt: civil and criminal. Civil contempt is generally used for two purposes: "'to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.'" *Local 28 of Sheet Metal Workers' Intern. Ass'n v. E.E.O.C.*, 478 U.S. 421, 443, 106 S. Ct. 3019, 92 L. Ed. 2d 344 (1986) (citations omitted); *see also Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1304 (11th Cir. 1991) ("The court has the power to impose coercive and compensatory sanctions."). Renfroe originally sought both forms of civil sanctions, but, as previously noted, Judge Acker declined to hold the Rigsbys and Scruggs in civil contempt. He observed that "[i]n order for the court to impose **coercive** civil contempt sanctions, Renfroe must show by clear and convincing evidence that the December 8, 2006 preliminary injunction **currently** is being violated." *Renfroe* Doc. 145 at 13 (emphasis in the original; citing cases). At the time Judge Acker considered whether to impose contempt, the documents had already been returned to Renfroe's attorneys as required under the injunction. The court held that because the "defendants and Scruggs testified that they no longer have any Renfroe or State Farm documents, and Renfroe has not presented evidence that clearly and

Case 2:06-cv-01752-SLB  Document 338  Filed 06/05/08  Page 30 of 65
Case 2:07-cr-00325-CRV   Document 34    Filed 02/29/2008   Page 11 of 25

*Page 11 of 25*

convincingly refutes these assertions," coercive civil contempt was not warranted. *Id.* at 17. Judge Acker further held that the issue of compensatory civil contempt was premature because the validity of the injunction was at that time being challenged in the Eleventh Circuit. *See Renfroe* Doc. 145 at 12-13. That appeal was later resolved and the motion for compensatory sanctions has been revived in the *Renfroe* case. *Renfroe* Doc. 188. The motion is still pending. To date, therefore, neither the Rigsbys nor Scruggs has been found in civil contempt.

In contrast to civil contempt, "[t]he role of criminal contempt is to protect the institutions of our government and enforce their mandates. A federal court may impose criminal sanctions pursuant to 18 U.S.C. § 401 (1982), to vindicate its authority and safeguard it [*sic*] own processes." *In re McDonald*, 819 F.2d 1020, 1023-24 (11th Cir. 1987); *see also Local 28 of Sheet Metal Workers' Intern. Ass'n, supra,* 478 U.S. at 443 ("Criminal contempt sanctions are punitive in nature and are imposed to vindicate the authority of the court."). "The essential elements of criminal contempt are that the court entered a lawful order of reasonable specificity, it was violated, and the violation was wilful. Whether the order is reasonably specific is a question of fact and 'must be evaluated in the context in which it is entered *and the audience to which it is addressed*.'" *McDonald, supra*, 819 F.2d at 1024 (citations omitted; emphasis added). The contempt may be either direct (*i.e.*, it takes place in the judge's presence), or indirect (*i.e.*, it takes place outside the judge's presence). *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827 n.2, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994). Direct contempt may be adjudged and sanctioned by the court summarily, whereas indirect contempt can be imposed only after notice and an opportunity to be heard. *See id; Fed. R. Crim. P. 42.* This case involves indirect criminal contempt.

Scruggs has been charged under 18 U.S.C. § 401(3) and Rule 42 of the Federal Rules of Criminal Procedure. Rule 42 sets forth the procedures that apply to

Case 2:06-cv-01752-SLB   Document 338   Filed 06/05/08   Page 31 of 65
Case 2:07-cr-00325-CRV   Document 34   Filed 02/29/2008   Page 12 of 25

Page 12 of 25

criminal contempt, including the notice that must be given to the alleged
contemnor, the court's authority to appoint a prosecutor, and the availability of a
jury trial. Section 401(3) states that the court "shall have power to punish by fine
or imprisonment, or both" contempt in the form of "disobedience or resistance to
its lawful writ, process, order, rule, decree, or command." The injunction *sub judice*
was issued under Rule 65 of the Federal Rules of Civil Procedure, which (although
since amended) provided at that time:

> Every order granting an injunction and every restraining
> order shall set forth the reasons for its issuance; shall be
> specific in terms; shall describe in reasonable detail, and
> not by reference to the complaint or other document, the
> act or acts sought to be restrained; and is binding only
> upon the parties to the action, their officers, agents,
> servants, employees, and attorneys, and upon those
> persons in active concert or participation with them who
> receive actual notice of the order by personal service or
> otherwise.

Fed. R. Civ. P. 65(d). A criminal contempt proceeding is *sui generis*, and the court
has the power and authority to order it dismissed when it is appropriate to do so.
*See, e.g., United States v. Barnett*, 346 F.2d 99, 100 (5th Cir. 1965) (binding
under *Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981)); *id.* at 102 (Tuttle, J.;
Brown, J., dissenting but acknowledging same); *accord United States v. Kelsey-
Hayes Co.*, 1971 WL 572, at *6 (E.D. Mich. Oct. 26, 1971) (courts have the
inherent power to dismiss criminal contempt charge before trial if the undisputed
facts "are such that it is manifest to the Court as a matter of law that there was no
willful contumacious violation"). The special prosecutors have pointed out that
there is no criminal procedure equivalent to the summary judgment of Rule 56 in
the Federal Rules of Civil Procedure. However, the criminal rule applicable here is
actually more demanding of the prosecution, because there must be a charge that
in light of the undisputed facts (resolved in the prosecution's favor) would support

a finding of guilt beyond a reasonable doubt. For the special prosecutors, there are two major hurdles to overcome in order to survive dismissal in this case, neither of which is evidentiary. In fact, for purposes of this order, I will assume that the prosecution's underlying theory of the case is true, that is, Scruggs approached Hood and asked him to "request" the State Farm documents so that he could avoid complying with the injunction, and he did so for personal and commercial reasons.

## A.     This court has no personal jurisdiction over Scruggs

For jurisdictional purposes, the undisputed facts are that Scruggs was not a party, nor was he an attorney-of-record or at any time make an appearance in, the *Renfroe* case. Subject to exceptions discussed *infra*, it is axiomatic that courts only have power and jurisdiction to enjoin parties before the court. *See Scott v. Donald*, 165 U.S. 107, 117, 17 S. Ct. 262, 41 L. Ed. 648 (1897) ("The decree is also objectionable because it enjoins persons not parties to the suit."); *Infant Formula Antitrust Litigation, MDL 878 v. Abbott Laboratories*, 72 F.3d 842, 842-43 (11th Cir. 1995) (court lacks jurisdiction to issue preliminary or permanent injunction against non-party); *Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302 (2d Cir. 1999) ("[A] court's in personam order can bind only persons who have placed themselves or been brought within the court's power.") (citations omitted); *Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1394 (Fed. Cir. 1996) ("Courts do not write legislation for members of the public at large; they frame decrees and judgments binding on the parties before them. For that reason, courts of equity have long observed the general rule that a court may not enter an injunction against a person who has not been made a party to the case before it.") (citing cases); *see also* 11A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2956, at 335 (2d ed. 1995). If one is not bound by an injunction, it naturally follows that he cannot be held in contempt for violating that injunction.

In *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 107 S.
Ct. 2124, 95 L. Ed. 2d 740 (1987), the Supreme Court of the United States
explained that in punishing contempt, "the Judiciary is sanctioning conduct that
violates specific duties imposed by the court itself, arising directly from the parties'
participation in judicial proceedings." *Id.* at 800. Therefore, "[a] court's authority is
inherently limited . . . by the nature of the judicial power, for the court has
jurisdiction in a contempt proceeding only over those particular persons whose legal
obligations result from their earlier participation in proceedings before the court."
*Id.* at 800 n.10.[7] Perhaps the seminal pronouncement on this subject is from Judge
Learned Hand, who wrote almost 80 years ago:

> [N]o court can make a decree which will bind any one but
> *a party*; a court of equity is as much so limited as a court
> of law; *it cannot lawfully enjoin the world at large, no*
> *matter how broadly it words its decree*. If it assumes to
> do so, the decree is pro tanto brutum fulmen, and the
> persons enjoined are free to ignore it. It is not vested with
> sovereign powers to declare conduct unlawful; *its*
> *jurisdiction is limited to those over whom it gets personal*
> *service, and who therefore can have their day in court*.

*Alemite Mfg. Corporation v. Staff*, 42 F.2d 832, 832-33 (2d Cir. 1930) (emphasis
added); *see also McKusick v. Melbourne*, 96 F.3d 478, 484 n.5 (11th Cir. 1996)
(noting the "substantial case law to the effect that a court lacks equitable power to
issue an injunction that binds the world at large"). Because he was not party to the
*Renfroe* case, the court is without jurisdiction over Scruggs (even if he did what the
injunction forbade) unless there is reason to bind him to the injunction. *See, e.g.,*

---

[7] Scruggs relies heavily on the above-quoted statements in *Young*, even though he
seems to believe that they are not part of the majority opinion. *See* Doc. 7 at 20
n.10 (stating that the quoted language in *Young* "is contained in Part III-B of the
court's opinion, which failed to obtain a fifth vote. . ."). In fact, the above quotes
are taken from *Part II-B*, which was the majority opinion joined by all five Justices.

Case 2:06-cv-01752-SLB   Document 338   Filed 06/05/08   Page 34 of 65
Case 2:07-cr-00325-CRV   Document 34    Filed 02/29/2008   Page 15 of 25

*Page 15 of 25*

*Alemite, supra,* 42 F.2d at 833 (an injunction cannot forbid "the act described . . . but only that act when the defendant does it").

It is true that the injunction, by its express terms, applied to the Rigsbys and "their agents, servants, employees, attorneys, and other persons in active concert or participation with them." This language almost exactly tracks Rule 65(d) of the Federal Rules of Civil Procedure, which, as quoted earlier, provides that an injunction is binding upon "the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them." Rule 65(d) was derived from, and specifically intended to codify, the common law doctrine "that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." *See Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14, 65 S. Ct. 478, 89 L. Ed. 661 (1945). Therefore, the broad language of Rule 65(d) is limited to those who fall within the "aider and abetter" ambit. The aider and abetter exception to the general rule against binding non-parties is well established, *see id.*; *see also United States v. Barnette*, 129 F.3d 1179, 1185 n.10 (11th Cir. 1997); *Waffenschmidt v. MacKay*, 763 F.2d 711, 714-17 (5th Cir. 1985); *G&C Merriam Co. v. Webster Dictionary Co., Inc.,* 639 F.2d 29, 35 (1st Cir. 1980); *Alemite, supra*, 42 F.2d at 833, and it was on this theory that Judge Acker appears to have based the contempt charge. *See generally Renfroe* Doc. 87 at 6-7 (citing and quoting three aider and abetter cases).

But, upon careful and technical examination, I conclude that the exception does not apply on the facts of the case because there is no evidence or claim that the Rigsbys themselves violated the injunction. Indeed, Judge Acker held that they had not acted improperly with respect to the injunction; they had given all the documents to Scruggs more than five months *before* the injunction was entered. An injunction, of course, does not "reach backwards in time to action taken prior to

Case 2:06-cv-01752-SLB Document 338 Filed 06/05/08 Page 35 of 65
Case 2:07-cr-00325-CRV Document 34 Filed 02/29/2008 Page 16 of 25

Page 16 of 25

the time it was issued." *See Paramount Pictures Corp. v. Carol Pub. Group, Inc.*, 25 F. Supp. 2d 372, 375 (S.D.N.Y. 1998) (citing cases). "The basic principle of law is recognized that an aider and abettor may not be guilty in aiding or abetting a principal unless a principal did as a matter of fact commit a crime. The law requires a guilty principal before the aider and abettor can be punished." *Edwards v. United States*, 286 F.2d 681, 683 (5th Cir. 1960) (citations omitted) (binding under *Bonner, supra*, 661 F.2d at 1206).

Thus, in *Merriam, supra,* 639 F.2d at 29, the First Circuit held that a non-party "can be found to be in contempt only if in active concert or participation with a party in postinjunction activity. [A] key principle in cases binding a nonparty . . . is that a person properly named in the injunction must have had a material role in the subsequent violation of that injunction." *Id.* at 35. The court went on to hold on the facts of the case that "because no contumacious act of [any party] has been found, [the non-party] cannot be held on the basis of aiding or abetting them." *Id.* This principle is well settled law. *See, e.g., Herrlein v Kanakis*, 526 F.2d 252 (7th Cir. 1975); *Heyman v. Kline*, 444 F.2d 65 (2d Cir. 1971); *United Pharmacal Corp. v United States*, 306 F.2d 515 (1st Cir. 1962); *Alemite, supra*, 42 F.2d at 832; *Garrigan v. United States*, 163 F. 16 (7th Cir. 1908); *see also Microsystems Software, Inc. v. Scandinavia Online AB*, 226 F.3d 35, 42 (1st Cir. 2000) (stating that if "the party prosecuting the contempt proceeding fails to show active concert or participation, a finding of contempt will not lie"); *Paramount Pictures Corp., supra,* 25 F. Supp. 2d at 374-75 ("A non-party in active concert cannot violate an injunction unless the enjoined party is also in contempt."); *Integrated Business Information Service (Proprietary) Ltd. v. Dun & Bradstreet Corp.,* 714 F. Supp. 296, 302 (N.D. III. 1989) ("[V]arious courts have held that unless a party violates the injunction, a non-party cannot be held under Rule 65(d), even though the non-party is doing what the injunction prohibits"); *O&L Assocs. v. Del Conte*, 601 F. Supp.

Case 2:06-cv-01752-SLB Document 338 Filed 06/05/08 Page 36 of 65
Case 2:07-cr-00325-CRV Document 34 Filed 02/29/2008 Page 17 of 25

Page 17 of 25

1463, 1464-65 (S.D.N.Y. 1985) ("Unless the defendants [in the underlying case] were involved in a violation of the Order, [the non-party] cannot be held in contempt as an abetter"); *accord* Annotation, *Who, Under Rule 65(d) of the Federal Rules of Civil Procedure, Are Persons "In Active Concert or Participation" With Parties to Action So As To Be Bound By Order Granting Injunction*, 61 A.L.R. Fed. 482, §§ 3-4 (citing cases and concluding that an aider and abetter may be liable for contempt only if he assists a party "who likewise engages in the enjoined act;" further explaining that "a person, other than a named party to an injunction, may be bound by the terms of the injunction only if the named party has also violated the terms of the injunction"). *Cf. Chase Nat'l Bank v. City of Norwalk,* 291 U.S. 431, 436-37, 54 S. Ct. 475, 78 L. Ed. 894 (1934) (non-party is enjoined from "knowingly aiding a defendant in performing a prohibited act" because the non-party in that situation is "privy to *his* contempt") (emphasis added).

Moreover, Judge Acker found that the Rigsbys attempted (even if only half-heartedly) to comply with the injunction by seeking to get the documents back from Scruggs and Hood. Specifically, both sisters and their attorney, Greg Hawley, made several phone calls to Scruggs and the Attorney General's Office and requested that the documents be delivered to counsel for Renfroe. This, too, precludes a finding that Scruggs aided and abetted any violation of the injunction. *See, e.g., Drywall Tapers of Greater New York Local 1974 of I.B.P.A.T., AFL-CIO v. Local 530 of Operative Plasterers and Cement Masons Int'l Assoc.*, 1987 WL 9682, at *6 (E.D.N.Y. Apr. 1, 1987) (explaining that where an enjoined party in another case attempted and was willing to comply with the injunction, the non-party charged with violating the injunction "was plainly not aiding and abetting him in any violation of the injunction"). Insofar as Judge Acker held in the June 15th Order (and the special prosecutors do not here dispute) that the Rigsbys did not violate the injunction, Scruggs cannot be held in contempt on the basis of aiding

Case 2:06-cv-01752-SLB   Document 338   Filed 06/05/08   Page 37 of 65
Case 2:07-cr-00325-CRV   Document 34      Filed 02/29/2008    Page 18 of 25

Page 18 of 25

and abetting. It is legally and logically impossible for Scruggs to have aided and abetted the contempt of parties who committed no contempt.[8]

The special prosecutors also argue that Scruggs was bound by the Renfroe injunction and subject to the personal jurisdiction of this court because he was "legally identified" with the Rigsbys. This argument is rooted in *Alemite, supra,* wherein Judge Hand stated in passing that a non-party may be in contempt if he aids and abets the defendant in violating an injunction, *or* if he is "legally identified" with him. 42 F.2d at 833. *Alemite* makes no attempt to define or explain what it means to be "legally identified" with an enjoined party. The Supreme Court has explained that a non-party must be "identified with [the enjoined party] in interest, in 'privity' with them, represented by them or subject to their control." *See Regal Knitwear, supra,* 324 U.S. at 14. To bind such a person, however, it must be shown that the named party was *in some way* involved in the violation, or that at the very least he was aligned in purpose with the would-be contemnor. *See Zenith*

_____

[8] The primary case upon which the special prosecutors rely, *Waffenschmidt, supra,* 763 F.2d at 711, can be easily distinguished because the named defendant in the underlying case had been found in contempt and jailed for over two months, and the non-parties worked with him in a common scheme. The Rigsbys, by contrast, have so far been cleared of criminal contempt. I again recognize that Judge Acker amended his June 15th Order to the extent that it exonerated the Rigsby sisters from contempt. But, he amended the order only because he was unsure of the relationship between Scruggs and the Rigsbys when the *qui tam* case was filed and at the time of the injunction. He did not disclaim or vacate his factual findings that, *inter alia*, (i) Scruggs "controlled" the documents when the injunction was issued; (ii) Scruggs was the "brains" behind the injunction-avoidance scheme; (iii) the Rigsbys learned only after-the-fact that the documents had been shipped to Hood; and thus (iv) the evidence as developed "preclude[d] a jury finding that [the sisters] knowingly or willfully violated the terms of the preliminary injunction." Even the special prosecutors now acknowledge and argue repeatedly that Scruggs acted in his own commercial interests and without the Rigsbys' knowledge and input. The sisters have not been charged with criminal contempt, even though the issue has "remain[ed] open" for more than six months since Judge Acker amended his order.

Case 2:06-cv-01752-SLB  Document 338  Filed 06/05/08  Page 38 of 65
Case 2:07-cr-00325-CRV   Document 34      Filed 02/29/2008   Page 19 of 25

Page 19 of 25

*Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 112, 89 S. Ct. 1562, 23 L. Ed. 2d 129 (1969) (non-party "cannot be held in contempt until shown to be in concert or participation" with a party); *Chase, supra,* 291 U.S. at 436 (referring to persons "legally identified" with a defendant as those who assist the defendant in "performing a prohibited act" and are "privy to his contempt"); *Lynch v. Rank*, 639 F. Supp. 69, 72 (N.D. Cal. 1985) (the non-party and enjoined party must have a "commonality of incentives and motivations"). This conclusion finds support in the *Alemite* decision itself. There, almost immediately after explaining that a non-party may be in contempt if he is "legally identified" with the defendant, Judge Hand explained that "if the defendant is not involved in the contempt, the [non-party] cannot be; the decree has not been disobeyed." *See* 42 F.2d at 833.; *see also id.* (holding that "the *only* occasion when a person not a party may be punished is when he has helped to bring about, not merely what the decree has forbidden, because it may have gone too far, but what it has the power to forbid, *an act of a party*") (emphasis added).

Again, the special prosecutors do not argue that the Rigsbys were involved in the violation, nor does there appear to be any evidence that they were. Judge Acker acknowledged that, for all intents and purposes, Scruggs was the principal. As the Second Circuit observed in *Doctor's Assocs., supra*:

> It is one thing for an injunction against a principal also to bind the principal's agents or servants. An order forbidding the principal to do an act on her own would normally be understood to bar the principal's servants or agents from doing the act for the principal's benefit. It is quite different for an injunction against an agent or servant also to bind the principal. By definition, the servant does not control the principal. If the court does not have jurisdiction over the principal, it is not easy to see why the court should have the power to bind her through an order directed against her servant.

191 F.3d at 304. The special prosecutors have not cited any case --- and my own research has uncovered none --- supporting the argument that a lawyer who represents a party in one case automatically becomes "legally identified" with that party for purposes of being bound by, and charged with violating, an injunction entered in another case, especially when that lawyer acts independent of his client and in his own interests. In fact, uniform case law would appear to hold to the contrary. *See, e.g., Regal Knitwear, supra,* 324 U.S. at 13 (court may not enforce injunction "so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law"); *Chase, supra,* 291 U.S. at 437 (court may not punish "as a contempt the conduct of persons who act independently"); *Microsystems Software, Inc., supra*, 226 F.3d at 43 ("A nonparty who has acted independently of the enjoined defendant will not be bound by the injunction."); *Additive Controls, supra,* 96 F.3d at 1395 (non-party may be in contempt "only for assisting the enjoined party in violating the injunction;" he is not liable "for engaging in independent conduct with respect to the subject matter of [the underlying] suit"); *Waffenschmidt, supra*, 763 F.2d at 718 ("[I]f a nonparty asserts an independent interest in the subject property and is not merely acting on behalf of the defendant, then rule 65(d) does not authorize jurisdiction over the party") (explaining *Heyman, supra*, 444 F.2d at 65); *see also Matrix Essentials v. Quality King Distributors, Inc.*, 346 F. Supp. 2d 384, 392 (E.D.N.Y. 2004) (stating that a non-party may be held in contempt "only upon the 'predicate' finding that the enjoined party has violated the injunction" because contempt "will not lie against one who 'acts independently'"); *Paramount Pictures Corp., supra,* 25 F. Supp. 2d at 374-75 (no contempt jurisdiction over non-parties "who act independently"); *see also United States v. Hall*, 472 F.2d 261, 264 (5th Cir. 1972) (acknowledging the "common law rule that a nonparty who violates an injunction solely in pursuit of his own interests cannot be held in contempt")

*Case No.: 2:07-cr-325/RV*

Case 2:06-cv-01752-SLB Document 338 Filed 06/05/08 Page 40 of 65
Case 2:07-cr-00325-CRV Document 34 Filed 02/29/2008 Page 21 of 25

Page 21 of 25

(binding under *Bonner, supra,* 661 F.2d at 1206).[9] It can thus be said that "Courts generally absolve contemnors who violate independently of the named party for their own benefit." Doug Rendleman, *Beyond Contempt: Obligors to Injunctions*, 53 Tex. L. Rev. 873, 880 (1975).

For these reasons, I must conclude that the *Renfroe* court had no jurisdiction over Scruggs.[10]

## B. Even if there is jurisdiction, Scruggs did not violate the injunction as worded

Assuming that Scruggs was bound by the injunction and, consequently, that there is jurisdiction over him, there is a "law enforcement exception" to the decree. The injunction stated that the documents could not be given to anyone "unless to law enforcement officials at their request." It is undisputed that Hood, as the Mississippi Attorney General, is a law enforcement official. It is likewise undisputed that Hood requested the documents. Scruggs contends that the contempt charge should be dismissed because he complied with the plain language of the injunction, and he is, therefore, innocent as a matter of law. The special prosecutors advance

_____

[9] In *Hall*, the former Fifth Circuit went on to hold that this rule *did not* apply on the facts of the case, and it upheld a criminal contempt conviction against a non-party. *Hall* was a school desegregation case in which the district court held members of the general public in contempt for actions that "imperiled the court's fundamental power to make a binding adjudication between parties properly before it." 472 F.2d at 265. The decision, authored by Judge John Minor Wisdom, was justified in large part because of the "peculiar problems" posed by school desegregation cases --- cases that "required courts to exercise broad and flexible remedial powers." *Id.* at 266. *Hall* can be distinguished and limited to its facts, as several of the above-cited cases have found. *Doctor's Assocs., supra,* 191 F.3d at 303 n.4; *Herrlein, supra,* 526 F.2d at 255; *Lynch, supra,* 639 F. Supp. at 75-76.

[10] Scruggs apparently *believed* he was subject to the injunction, and that is why he called Hood the night it was issued to discuss what to do. The special prosecutors referenced this fact during the hearing on this matter. But, as I indicated then, the fact that Scruggs may have *mistakenly* believed he was bound by the injunction is not, in itself, sufficient to create jurisdiction.

two arguments in response. First, they argue that Scruggs has misinterpreted the words of the injunction because it did not permit *post*-injunction disclosure to law enforcement. They next argue that, even if the injunction did permit disclosure to law enforcement, the disclosure here was a "sham." They contend that Scruggs and Hood schemed to avoid compliance with the injunction for business purposes.

Injunctions must be read and interpreted objectively, like contracts. Indeed, there are "unbroken lines of authority that caution [courts] to read court decrees to mean rather precisely what they say. Decrees must be specific; they must describe in reasonable detail just what acts they forbid." *NBA Properties, Inc. v. Gold*, 895 F.2d 30, 32 (1st Cir. 1990) (Breyer, J.); *accord Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1244 (11th Cir. 2007) (injunction must be a "clear, definite, and unambiguous order requiring [or prohibiting] the action in question") (brackets in original; citation omitted); *see also United States v. Saccoccia*, 433 F.3d 19, 28 (1st Cir. 2005); *Grace v. Center for Auto Safety*, 72 F.3d 1236, 1241 (6th Cir. 1996). These specificity requirements are not "merely technical," but rather they are "designed to prevent uncertainty and confusion" and to avoid basing a contempt charge "on a decree too vague to be understood." *NBA Properties, Inc., supra,* 895 F.2d at 32. To the extent that there is any ambiguity or omission in the injunction, the order must be interpreted "to the benefit of the person charged with contempt." *Id.* (citing cases); *see also Georgia Power Co. v. N.L.R.B.,* 484 F.3d 1288, 1291 (11th Cir. 2007) ("[W]e will construe any ambiguities or uncertainties in such a court order in a light favorable to the person charged with contempt."). With the foregoing in mind, I turn to the precise terms of the injunction.

There are two operative paragraphs. The first provided that the Rigsbys were "MANDATORILY ENJOINED" to "deliver forthwith" the State Farm documents to counsel for Renfroe. *See Renfroe* Doc. 60 at 13 (emphasis in the original). The second provided that the Rigsbys were "further ENJOINED not to further disclose,

Case 2:06-cv-01752-SLB Document 338 Filed 06/05/08 Page 42 of 65
Case 2:07-cr-00325-CRV Document 34 Filed 02/29/2008 Page 23 of 25

Page 23 of 25

use or misappropriate any material described in the preceding paragraph unless to law enforcement officials at their request." *See id.* (emphasis in the original). There is some ambiguity in the wording of the order because if the first paragraph was complied with (and the documents were given to counsel for Renfroe), then as Judge Acker himself acknowledged at the March 2007 contempt hearing [*see* Doc. 130 at 187-88], the second paragraph would be superfluous (*i.e.*, the Rigsbys could not further disclose, use or misappropriate materials no longer in their possession). The special prosecutors attempt to resolve this ambiguity by arguing that the second paragraph meant only that the Rigsbys "could cooperate with law enforcement by discussing with law enforcement what they knew about the documents." *See* Doc. 11 at 5. This contention overlooks the nature of the object of the injunction. The second paragraph by its own terms applied to "any *material* described" in the first paragraph, which plainly consisted of the tangible documents themselves. Any attempt to limit the second paragraph to "mental impressions" or "recollections" must fail.

Resolving the ambiguity in a light most favorable to Scruggs, as the Eleventh Circuit has mandated, the injunction may be simply and reasonably read as follows. The first paragraph required the Rigsbys to deliver the documents "forthwith." That means "promptly; within a reasonable time under the circumstances." Black's Law Dictionary at 664 (7th ed.). If, however, a law enforcement official requested the documents *before* such delivery was accomplished, then under the terms of the injunction, the Rigsbys and Scruggs were authorized to comply with that request. The documents were voluminous (several thousand pages), and they were in Scruggs's possession. He learned of the injunction in the afternoon of Friday, December 8, 2006. It is perhaps not reasonable to expect on these facts that the documents would be delivered immediately, that is, Friday night. This is especially so considering that the injunction did not even become effective until Monday,

*Case No.: 2:07-cr-325/RV*

December 11th, when the bond was posted. During the intervening weekend, Hood requested the documents. This request fell within the law enforcement exception, which was an exception noted several times by the Eleventh Circuit on appeal in the *Renfroe* case. *See generally* 11th Cir. Op. at 4, 10, 12. Even though that ruling was entered in a different case involving different issues on appeal (and the Court of Appeals was not being called upon to decide whether the delivery to Hood was legitimate), the panel was nonetheless interpreting the *language* of the injunction, and I find that interpretation relevant here.

The special prosecutors next argue that, even if the injunction can be read to permit the shipment to law enforcement instead of Renfroe's counsel, Scruggs is still criminally liable because the transaction with Hood was a "sham." I agree that there is a cloud of suspicion surrounding the agreement between Scruggs and Hood. Scruggs claims that he and Hood believed the documents would be returned to Renfroe and State Farm in violation of the protective order, but he does not explain the basis for this concern. Moreover, even if the concern was well-founded in hindsight (as he now argues, *see* Doc. 7 at 7 n.3), he does not explain how that disclosure to Renfroe would have, or did, impede the criminal investigation. He also does not explain why he did not take his concerns to Judge Acker instead of making after-hour and weekend agreements with Hood. The timing of these events and of Scruggs's other cases involving State Farm (one of which was settled just 10 days before the Attorney General returned the documents to counsel for Renfroe) is another reason to be suspicious, as is Hood's unusual letter to United States Attorney Martin, suggesting that Scruggs not be prosecuted for contempt because he was a "confidential informant."

However, the fact remains that Scruggs did not violate the clear and express terms of the injunction. Again, as then-Judge (now Justice) Stephen Breyer has observed, courts must read injunctions "to mean rather precisely what they say."

*Case No.: 2:07-cr-325/RV*

*NBA Properties, supra*, 895 F.2d at 32. The injunction specifically and precisely said the documents could be given "to law enforcement officials at their request." Regardless of the subjective intent that Hood may have had when he requested the documents, the undisputed fact is that he *did* make such a request. The objective language of the injunction expressly authorized the law enforcement exception, and it must be recognized here. Criminal contempt under such circumstances cannot be supported under the law.

## III.  CONCLUSION

For the above reasons, Scruggs's motion to dismiss, Doc. 7, is GRANTED, and this case is DISMISSED, with prejudice. All other pending motions are DENIED as moot.

**DONE AND ORDERED** this 29th day of February, 2008.

/s/ *Roger Vinson*

**ROGER VINSON**
**Senior United States District Judge**

# APPENDIX "B"

FILED
2008 Apr-15 AM 11:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, } | |
| } | |
| v.                        } | |
| }                          | **2:07CR-00325-CRV** |
| **RICHARD F. SCRUGGS and** } | |
| **THE SCRUGGS LAW FIRM,**  } | |
| **P.C.,** | |

### UNITED STATES OF AMERICA'S MOTION TO EXTEND TIME TO FILE NOTICE OF APPEAL PURSUANT TO RULE 4(b)(4)

COMES NOW, the United States of America (USA) and moves this Honorable

Court to extend the deadline for filing a Notice of Appeal for a period not to exceed 30

days from the date of expiration from the time prescribed by Rule 4 (b). The date to

which a Notice of Appeal is to be filed is to be April 29, 2008. This motion is based

on Rule 4(b)(4): a) excusable neglect, and b) good cause.

### A.   Rule 4(b)(4) - Excusable Neglect:

Contempt prosecutions that arise as this one did are rare compared to

prosecutions that arise from the ordinary grand jury process. Charles E. Sharp, (Sharp)

the Senior Special Prosecutor, upon reading the court's opinion of February 29, 2008,

reviewed the Federal Rules of Criminal Procedure Rule 60(g)(1) which states:

1

"***From a District Judge's Order or Judgment.*** The Federal Rules of Appellate Procedure govern an appeal from a district judge's order or a judgment of conviction or sentence. "

Sharp then read the Federal Rules of Appellate Procedure. He read 4(a)(1)(B)

of the Rules of Appellate Procedure which states as follows:

"When the United States or its officer or agency is a party, the notice of appeal may be filed by any party within 60 days after the judgment or order appealed from is entered."

Sharp thought this was logical because different governmental agencies might

need 60 days to make a decision. Sharp had never filed a Notice of Appeal in a

criminal case, and did not have the benefit of an experienced appellate division

common to almost all United States Attorney's offices. Sharp was in the extremely

rare position of representing the USA while not being trained or part of a United States

District Attorney's office.

Having read as far as he did, Sharp was therefore of the opinion that the USA

had 60 days to file a Notice of Appeal which would make the notice due on April 29,

2008.

Sharp has now learned that Rule 4(b)(1)(B) appeal in a criminal case would

apply, which states:

"When the government is entitled to appeal, its notice of appeal must be filed in the district court within 30 days after the later of:
(i)     the entry of the judgment or order being appealed; or

2

(ii)    the filing of a notice of appeal by any defendant."

Only a few days have passed since the expiration of the 30 days, and no party is prejudiced by the passage of this time.

### Rule 4(b)(4) - Good Cause:

The USA believes that if your Honor would extend the time to file a Notice of Appeal that it has an appeal of substantial merit, and that a resolution by the Eleventh Circuit will be important, not only to these litigants, but to future litigants.

Your Honor held the court held no jurisdiction over Richard Scruggs (Scruggs) because he was not an attorney of record. The USA contends it is entitled to an evidentiary hearing as to whether the court had jurisdiction over Scruggs. The USA contends that Scruggs was subject to the injunction of December 8, 2006.

Rule 65(d) of the Federal Rules of Civil Procedure states:

"Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal services or otherwise." (Emphasis added)

In Judge Acker's Memorandum Opinion dated June 15, 2007, stated:

"Although Scruggs does not appear as an attorney of record for either of the Rigsbys in the instant action, there is no dispute about the fact that

3

Scruggs was an attorney for the Rigsbys in relation to the subject of the
documents when the injunction was issued..."

Judge Acker's opinion was that there was no dispute that Scruggs was an

attorney of the Rigsbys at least for the documents.

Scruggs testified at the Contempt Hearing on March 19-20, 2007, that the

relationship between he and Rigsby sisters was attorney/client.

Jack Held, representing Renfroe, asked the following questions:

Page 133:
Q.  I'm going to get right to the point and ask about your relationship
    with the Rigsby sisters. One relationship was as an attorney/client;
    is that correct?
A.  That's correct.

Page 142:
Q.  Has there been an attorney/client relationship with the Rigsby
    sisters from February '06 to the present even though the
    relationship may have changed, in other words, continuous?
A.  Yes.

Page 143:
Q.  Has that relationship continued?
A.  There's been no interruption in the relationship, that's correct.

Page 147-150:
Q.  All right. Before the attorney/client relationship was established,
    did either of the Rigsby sisters call you and tell you that they had
    documents concerning the Katrina disaster?
A.  No.
Q.  Did you learn of those documents after the attorney/client
    relationship was established?
A.  Yes.

4

Q.     Does your scope of employment or scope of your relationship with the Rigsby sisters, have anything to do with this lawsuit?

A.     I'm sorry, would you ask that again?

Q.     I guess the scope of your relationship, the attorney/client relationship with the Rigsby sisters, does it have anything to do with this lawsuit pending before Judge Acker?

A.     It seems that it does.

Q.     Is the Scruggs Katrina Group paying their attorneys fees?

A.     Yes.

Q.     Did the group - - when I say group, the Scruggs Katrina Group - - locate counsel for them?

A.     Yes. Well, Mr. Barrett, as was testified earlier, did that.

Q.     Well, did you write to State Farm's New York counsel and demand that they intervene in some way with this lawsuit and require Renfroe to dismiss it?

***

Kerri Rigsby, testified in her deposition of January 26, 2007, and stated:

Page 71:

Q.     And you recall that that was the day before or maybe even not 24 hours before you had your first meeting with Mr. Scruggs?

A.     Yes.

Q.     And as I recall, you said that at that first meeting, you felt you had retained him to be your lawyer?

A.     I felt like - - yes, because I - - when I met with him, I really wanted guidance. I wanted him to help me or to guide me or to do it, you know something.

Page 72:

Q.     What understanding did you have of the terms of your engagement of Mr. Scruggs to represent you?

A.     Well I looked at him as a lawyer ...

Q.     And because he was going to be your attorney, you expected that he would be paid for his services?

5

A.    It didn't - - I didn't think about it. But, yes, I would pay him. If he provided a service for me, I would have, yes, or I will.

Page 73:

Q.    When was your - - the next meeting that you had with Mr. Scruggs?

A.    It could have been several weeks. I don't recall meeting with him very often. Maybe - -

***

Mr. Hawley (representing the Rigsbys):

Page 73-74:

"Let me just clarify and make an attorney/client privilege objection to this extent: I think the record is clear from yesterday that there are two different representations. I think you've established the scope of the initial one over the documents."

***

Kerri Rigsby testified as follows in her deposition in Renfroe taken January 26,

2007:

Page 14, lines 6-25 and Page 142, lines 1-16:

Q.    Okay. So now we have the representation dealing with the taking of the documents, and you consider that this additional lawsuit is not involving the taking of the documents?

A.    I haven't read the whole lawsuit. I can't speak.

Q.    Okay. We've got the first representation that was signed up in February. We've got the second representation that was signed up in April. Now we have a third representation; is that what you're contending, that this new lawsuit is a third representation?

A.    It could be. I think of Dick Scruggs – the scope of the way I think of Dick Scruggs is a lawyer. **Anything dealing with the law, that's the scope of how I see Dick Scruggs as well as** – and the

6

Katrina group as an employee. **But I think if Dick Scruggs as my lawyer. I don't know the different aspects of the law. He's my lawyer. I trust him with my legal issues. Scope, that's the scope of what I'm telling you.**

Q.   Well, your lawyer, Mr. Hawley, has taken great pains to distinguish that the scope - the difference in the scope of anything dealing with the documents from the scope of the second matter. Did you consider those to be two different scopes of the lawsuit, two different lawsuits of two different scopes?

MR. HAWLEY:
The April matter, we'll call the second one?

MS. STANLEY:
Q.   The April matter.
A.   I wouldn't have considered it two different scopes if I hadn't been advised I couldn't talk about it.

In the deposition of Cori Rigsby Moran, taken January 25, 2007, Mr. Hawley,

who was representing Cori, stated:

Page 12:
"... There are going to be a lot of privilege issues here today, and I know you anticipate that. But Cori here has, as you heard yesterday, retained the Scruggs firm initially to talk about the documents..."

Is it not inconsistent to claim attorney/client privileges between the Rigsbys and

Scruggs and then deny that he is subject to the injunction because he was not the

attorney?

7

The USA believes that there was sufficient evidence to warrant an evidentiary hearing as to whether Scruggs was the attorney for the records and hence, pursuant to Rule 65(d), subject to the injunction although he was not attorney of record.

USA does not disagree with the general proposition that unless Defendants in an underlying case were involved in a violation, that a non-party could not be held in contempt as an abettor. However, in this case, Scruggs, as attorney for the Rigsbys, prevented them from complying with the injunction by illegally removing the records that they were enjoined to deliver from their control. There is no case that holds that an attorney who conceals or delivers documents to circumvent an injunction is not in contempt of court. There would be no reason to hold the Rigsbys in contempt. In *United States v. Bryan*, 339 U.S. 323, 330-332, 70 S. Ct. 724, 730, 94 L. Ed. 884, the Supreme Court said, "Ordinarily, one charged with contempt of court for failure to comply with a court order makes a complete defense by proving that he is unable to comply. A court will not imprison a witness for failure to produce documents which he does not have unless he is responsible for the unavailability." *Jurney v. MacCracken*, supra 294 U.S. 125, 55 S. Ct. 375, 79 L. Ed. 802, or is impeding justice by not explaining what happened to them.

*United States v. Goldstein*, 2 Cir., 1939, 105 F. 2d 150, "On the other hand, persons summoned as witnesses by competent authority have certain minimum duties

8

and obligations which are necessary concessions to the public interest in the orderly operation of legislative and judicial machinery. A subpoena has never been treated as an invitation to a game of hare and hounds, in which the witness must testify only if cornered at the end of the chase. If that were the case, then, indeed, the great power of testimonial compulsion, so necessary to the effective functioning of courts and legislatures, would be nullity."

USA believes it was entitled to an evidentiary hearing as to whether Scruggs delivering the State Farm documents to Attorney General Hood was in compliance with the injunction or whether it was a subterfuge and, in fact, a fraud on the court.

Rather than make a good faith effort to comply with the injunction, Scruggs intentionally violated the injunction. This constitutes criminal contempt. He was holding the State Farm documents as his clients' Rigsby and Moran's evidence. Judge Acker's injunction did not specify that disclosure to a law enforcement officer would be in good faith. However, good faith is implied in every order of the court and it would be redundant to so state. This is particularly true with respect to the Defendant Scruggs, a competent and noted attorney.

In the opinion of USA, a hearing should be held to determine whether the transfer to Attorney General Hood was done in good faith. The trier of fact should consider the following:

9

1)  The request to send the documents to Attorney General Hood was originated by Scruggs;

2)  The records which were estimated to be up to 15,000, were never catalogued or Bate's Stamped and had no importance or significance to law enforcement;

3)  The purpose and intent was merely to aid Scruggs in keeping control of the records;

4)  More importantly, to keep the records out of State Farm's hands so that they could not evaluate their significance in the civil cases that were being prosecuted by Scruggs;

5)  The records were released to the custody of Renfroe's lawyers only after they had served their purpose and Scruggs had negotiated a settlement with a multimillion dollar legal fee;

6)  Judge Acker ordered the records to be held by Renfroe's counsel pursuant to a Protective Order and not Scruggs' political ally;

7)  Scruggs had resisted the injunction; he did not agree with it and he unilaterally overruled it; and

10

8)    Evidence continues to materialize of the questionable relationship
        between Scruggs and Attorney General Hood.[1]

In Hood's recent testimony, in an action filed against him relating to Katrina

litigation and his relationship with Scruggs, that in addition to direct personal

contributions from Scruggs, he apparently received $850,000 from the Democratic

Association of Attorneys General and that IRS filings reveal that Scruggs contributed

$300,000 to DAGA in October 2007; Scrugg's former attorney Langston (who recently

plead in one of the Mississippi bribery cases involving Scruggs' fee litigation)

contributed $100,000 and other SKG attorneys contributed $70,000.

In the court's opinion of February 29, 2008, your Honor stated,

"Judge Acker was faced with a very difficult and unusual situation, and
I am sympathetic to what he attempted to do. He entered an order and
binding injunction in the *Renfroe* case, only to have the defendants'
attorney from separate (albeit related) litigation circumvent that order with
help from an ally and friend in an important political law enforcement
position. As will be discussed in Section II.B *infra*, there is a cloud of
impropriety surrounding what Scruggs did and the nature of his eleventh
hour agreement with Hood. It is certainly understandable that Judge
Acker would attempt to hold him accountable. Perhaps there are ethical

---

[1] "U.S. District Judge Roger Vinson seemed to be holding his nose as he did so. "I agree that there is a
cloud of suspicion surrounding the agreement between Scruggs and Hood," he wrote. Likewise suspicious, he
noted, was Hood's unusual letter to Martin. "However, the fact remains that Scruggs did not violate the clear and
express terms of the injunction." But according to court documents filed just days before Vinson's ruling, **one of
Scruggs' close associates, Timothy Balducci, had already told the FBI that Scruggs paid his firm $500,000 to
get Hood to back off the State Farm cases**. In January 2007, State Farm had agreed to a global settlement of
Scruggs' Katrina-related cases that would provide initial fees of $26.5 million, plus as much as $20 million more
in another group of cases. State Farm balked at the settlement, however, when Hood threatened to indict the
insurance giant for fraud." *ABA Journal*, April 2008.

11

issues that should be examined. But, the question is not whether Scruggs acted ethically; the question is whether he can be held criminally responsible in a contempt proceeding."

Your Honor seemed to be indicating that while Scruggs' motives and actions may have been improper, that strictly interpreting the injunction, he had indeed found a loop hole. We contend the loop hole he created cannot withstand the smell test.

The USA contends that it should be entitled to a hearing on whether the acts of Scruggs in sending the records to Attorney General Hood was, in fact, a sham. It is well recognized in the law that actions purporting to conform to a legal requirement can be illegal, even criminal, if the purported confirmation is a sham. The question as whether the Attorney General was acting as a law enforcement officer, or merely as a commercial ally of Scruggs is a question of fact yet to be determined by a trier of fact.

The Attorney General already had the records. The records should have been under the ultimate control of Scruggs' clients, Cori Rigsby Moran and Kerri Rigsby. Any disposition of records provided to a lawyer by his client should not be transferred or disclosed to a third party without the client's consent. It was undisputed that Scruggs was in negotiations with State Farm and that the State Farm records, in his possession, was the main basis for his negotiations. He would not, and did not, return the records until he had successfully concluded his multimillion dollar settlement negotiations.

12

The USA is respectfully of the opinion that the court erred in holding that Scruggs was not subject to the jurisdiction of the injunction of December 8, 2006, and that he did not find a loop hole because delivery to the Attorney General was not in good faith, nor did it serve any legitimate law enforcement purpose.

As the court may be aware, Scruggs has entered a plea of guilty in the conspiracy to commit bribery of a state circuit judge case. See attached Plea Agreement. This illustrates Scruggs' lack of respect for the bench and judicial system, and this fact would be admissible as evidence of the Defendant's bad faith and defiance of the court's order.

These are issues that bear not only on this case, but deserve settling for future cases. There are also procedural and jurisdictional issues raised in this litigation that could be used in future cases of criminal contempt. The USA believes that under facts to be presented, there is more than ample proof that Scruggs subjected himself to the court's jurisdiction. If a narrow view of jurisdiction is adopted, the door to future bad faith evasion of court orders would be opened wide for similar misconduct.

The ultimate ruling deserves review by a Circuit Court of Appeals and a reported decision.

This case ought to be appealed to allow the Eleventh Circuit to rule on the above merits of the USA case.

13

"The essential elements of criminal contempt are that the court entered a lawful order of reasonable specificity, it was violated, and the violation was wilful. Whether the order is reasonably specific is a question of fact and 'must be evaluated in the context in which it is entered and the audience to which it is addressed.'" *In re McDonald*, 819 F. 2d 1020 at 1024 (11th Cir. 1987).

Rule 4(b)(4) provides, "... the district court may - before or after the time expired, with or without motion and notice - extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this Rule 4(b)." It is therefore not necessary to have a motion with notice in order to extend the time.

WHEREFORE, PREMISES CONSIDERED, the Special Prosecutors request that this Honorable Court extend the time to file a Notice of Appeal to April 29, 2008.

Respectfully submitted:

s/**Charles E. Sharp, Sr.**
Charles E. Sharp, Sr.
Special Prosecutor on behalf of
    United States of America
Sadler ◆ Sullivan,P.C., Suite 2500
420 North 20th Street
Birmingham, Alabama  35203

14

**s/Joel A. Williams**
Joel A. Williams
Special Prosecutor on behalf of
   United States of America
Sadler ❖ Sullivan, P.C., Suite 2500
420 North 20th Street
Birmingham, Alabama   35203


**s/Michael V. Rasmussen**
Michael Vail Rasmussen
Special Prosecutor on behalf of
United States of America
1122 22nd Street North
Birmingham, Alabama   35242

## CERTIFICATE OF FILING AND SERVICE

     I hereby certify that on the 15th day of April, 2008, I have caused a copy of the above and foregoing **United States of America's Motion to Extend Time to File Notice of Appeal** to be delivered for service upon the following:

William M. Acker, Jr.
Senior United States District Judge
481 Hugo L. Black United States Courthouse
1729 5th Avenue North
Birmingham, Alabama 35203

John W. Keker
Steven A. Hirsch
Brook Dooley
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, California   94111

15

Frank M. Bainbridge
Bruce F. Rogers
Bainbridge, Mims, Rogers & Smith, LLP
Post Office Box 530886
Birmingham, Alabama 35253

Robert J. McLean
Post Office Box 430024
Birmingham, AL   35243

> **s/ Charles E. Sharp, Sr.**
> OF COUNSEL

16

Case 2:06-cv-01752-SLB   Document 338   Filed 06/05/08   Page 62 of 65
Case 3:07-cr-00192-NBB-SAA   Document 160   Filed 03/14/2008   Page 1 of 4
Case 2:07-cr-00325-CRV   Document 35-2   Filed 04/15/2008   Page 1 of 4

FILED

2008 Apr-15 AM 11:42
U.S. DISTRICT COURT
FILED N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF MISSISSIPPI

MAR. 1 4 2008

DAVID J. HEWS, CLERK
By _____
Deputy

UNITED STATES OF AMERICA

v.                                            CRIMINAL NO. 3:07CR192

RICHARD F. "DICKIE" SCRUGGS

### PLEA AGREEMENT

The United States Attorney hereby proposes to the Court a plea agreement to be filed in this cause under Rule 11(c) of the Federal Rules of Criminal Procedure. Defendant has read and fully understands this plea agreement and approves same, realizing that the plea agreement is subject to acceptance or rejection by the Court. The plea agreement is as follows:

1. **GUILTY PLEA.** The defendant agrees to plead guilty under oath to Count One of the Indictment, which charges conspiracy to corruptly influence a state circuit court judge, and which carries maximum possible penalties of 5 years imprisonment, $250,000 fine, 3 years supervised release, and a mandatory special assessment of $100; all in violation of Title 18, United States Code § 371.

2. **OTHER CHARGES.** The United States agrees to move the Court to dismiss the remaining counts Two through Six of the Indictment (as to this defendant) at sentencing.

3. **SENTENCING.** There is no agreement as to the sentence to be imposed, which will be in the sole discretion of the Court subject to the Federal Sentencing Guidelines. Both parties reserve their right to speak at sentencing.

Case 2:06-cv-01752-SLB   Document 338   Filed 06/05/08   Page 63 of 65
Case 3:07-cr-00192-NBB-SAA   Document 160   Filed 03/14/2008   Page 2 of 4
Case 2:07-cr-00325-CRV   Document 35-2   Filed 04/15/2008   Page 2 of 4

4. **SPECIAL ASSESSMENT**. The defendant agrees pursuant to 18 U.S.C. § 3013 to pay to the Clerk of the U. S. District Court prior to sentencing in this case the mandatory $100 assessment fee for each count to which he pleads guilty, which is by law in addition to any other penalty imposed.

5. **OTHER AUTHORITIES**. This agreement does not bind any prosecuting authority of any state or any other federal district, nor does it bind the Attorney General of the United States with regard to any matter, criminal or civil, involving federal tax laws.

6. **ACKNOWLEDGMENTS: NO OTHER AGREEMENTS; DEFENDANT IS IN FACT GUILTY**.    Apart from being advised of the applicability of the U.S. Sentencing Guidelines, no promise or representation whatsoever has been made to defendant as to what punishment the Court might impose if it accepts the plea(s) of guilty. Defendant agrees that the Court may continue all proceedings in the case until such date as the Court may set for consideration of the plea agreement, the plea of guilty and imposition of sentence. This agreement fully reflects all promises, agreements and understandings between the defendant and the United States Attorney. The defendant's agreement is knowing, free and voluntary, and not the product of force, threat, or coercion. The defendant is pleading guilty because defendant is in fact guilty of the charges.

Case 2:06-cv-01752-SLB   Document 338   Filed 06/05/08   Page 64 of 65
Case 3:07-cr-00192-NBB-SAA   Document 160   Filed 03/14/2008   Page 3 of 4
Case 2:07-cr-00325-CRV   Document 35-2   Filed 04/15/2008   Page 3 of 4

The foregoing constitutes the only plea agreement between the parties.

This the _____ 14ᵗʰ _____ day of _____ March _____, 2008.

JIM M. GREENLEE
UNITED STATES ATTORNEY
Mississippi Bar No. 7018

AGREED AND CONSENTED TO:

RICHARD F. "DICKIE" SCRUGGS, Defendant

APPROVED:

JOHN KEKER, Attorney for Defendant

Case 2:06-cv-01752-SLB   Document 338   Filed 06/05/08   Page 65 of 65
Case 3:07-cr-00192-NBB-SAA   Document 160   Filed 03/14/2008   Page 4 of 4
Case 2:07-cr-00325-CRV   Document 35-2   Filed 04/15/2008   Page 4 of 4

## UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

v.                                  CRIMINAL NO. 3:07CR192

RICHARD F. "DICKIE" SCRUGGS

### **PENALTIES**

#### **Count One**

nm 5 years imprisonment – 18 U.S.C. § 371
nm $250,000 fine – 18 U.S.C. § 3571(b)(3)
nm 3 years supervised release – 18 U.S.C. § 3583(b)(2)
$100 special assessment – 18 U.S.C. § 3013