IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| E.A. RENFROE & COMPANY, INC., | } | |
| | } | |
| Plaintiff, | } | |
| | } | CIVIL ACTION NO. |
| v. | } | 06-AR-1752-S |
| | } | |
| CORI RIGSBY, et al., | } | |
| | } | |
| Defendants. | } | |

**MEMORANDUM OPINION AND ORDER**

Before the court are oceans of motions, motions to compel, motions to quash, and motions for protection. While this court, like all other courts, would prefer for discovery disputes either not to occur or to be resolved without the court's intervention, it appears that the parties in this case have been unable to draw the bounds of permissible discovery for themselves. Their impasse necessitates reluctant judicial participation.

**Rigsbys' Motion to Compel Deposition Testimony (Dkt. No. 283) and Renfroe's Responsive Motion for Protection (Dkt. No. 311)**

On April 16, 2008, defendants Cori Rigsby and Kerri Rigsby (the "Rigsbys") filed a motion to compel the deposition testimony of Don Goodin ("Goodin") and Steve Cantrell ("Cantrell"), two employees of plaintiff E.A. Renfroe & Co. ("Renfroe"). The Rigsbys urge the court to compel this deposition testimony over Renfroe's objections. The Rigsbys also move for a dismissal of Renfroe's breach of contract claim as a sanction for the alleged disruptive behavior of Renfroe's counsel and to award the Rigsbys costs and fees associated

1

with the pursuit of their motion.  In its response to the Rigsbys' motion, Renfroe has moved for the court's protection, seeking an order that would set limits on the follow-up questions that counsel for the Rigsbys may pose to the witnesses and to prevent additional questioning on certain topics.

In the Rigsbys' unfinished depositions of both witnesses, counsel for Renfroe instructed the witnesses not to answer upwards of thirty questions.  Renfroe's objections were based on the form of the question and on the question's relevance to the claims and defenses at issue.  Renfroe also reserved the right to make other objections at trial.  The parties have come to an agreement regarding most of the disputed matters.  However, three basic issues remain.  The first is whether the follow-up questions to the agreed-upon topics for re-deposition must either be *specifically* related to the questions originally posed to the witnesses (as Renfroe argues) or whether those follow-up questions may simply be *reasonably* related to the original questions (the Rigsbys' position).  The second issue is whether the Rigsbys may re-ask questions on two topics that Renfroe still argues are irrelevant and/or privileged. The final issue is whether Renfroe should be sanctioned for the actions of its counsel during the depositions.

With respect to the first issue, the court finds that any follow-up questions to the original questions posed to the witnesses that both parties have agreed may be revisited must be *reasonably* related to the original questions.  While the court feels that it is

2

only dealing with semantics, it emphasizes the tried-and-true standard for discoverable evidence - anything that is not privileged and that is "*reasonably calculated to lead to the discovery of admissible evidence*." Fed. R. Civ. P. 26(b)(1) (emphasis added). The court sees no reason why the Rigsbys should not be given the opportunity to ask reasonably-related additional questions given the broad scope of what is discoverable evidence under the federal rules. Because the court finds that a specific standard is too stringent in this context, the Rigsbys will be permitted to ask reasonably-related follow-up questions to their original, unanswered deposition questions.

Additionally, the parties have been unable to reach an agreement regarding the Rigsbys' motion to compel Goodin and Cantrell to answer questions regarding their personnel evaluations of the Rigsbys. Renfroe argues that such questions are only related to a retaliatory discharge affirmative defense, which the Rigsbys have waived here, and that, as a result, these questions are irrelevant to the claims and defenses at issue here. While the court stands by its earlier statement that any retaliatory discharge claim that the Rigsbys may have been able to make in this case has certainly been waived, Renfroe's objections to this line of questioning and instructions to the witnesses not to answer the questions were improper. Fed. R. Civ. P. 30(c)(2) states, "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court,

or to present a motion under Rule 30(d)(3)." None of these justifications were available to Renfroe with this line of questioning. Although, in Renfroe's opinion, the questions posed may only be relevant to a retaliatory discharge defense, they are related to the issues giving rise to the claims and defenses in this matter. The Rules allow for a broad scope of discovery and do not permit counsel to instruct a witness not to answer a deposition question merely because counsel believes the question to be irrelevant. *See Gober v. City of Leesburg*, 197 F.R.D. 519, 520 (S.D. Fla. 2000) ("[W]hile a party may object to a question based on form and/or relevancy, it is improper to instruct a witness not to answer a question based on form and relevancy objections"). What Renfroe may believe to be irrelevant may or may not be vital to the Rigsbys' theory of the case, of which Renfroe may not be aware. The questions posed, however distasteful to Renfroe, do not cross the bounds of permissible questioning in a deposition. The questions are not so unrelated as to have been posed in bad faith or for purposes of annoyance or harassment. Thus, counsel for the Rigsbys should have had their questions answered.

For the same reasons, the questions posed to Goodin by counsel for the Rigsbys regarding Paul Moran also should have been answered. While Renfroe makes a belated attempt to argue that the line of questioning touches on a privileged manner, the questions posed are no broader than the questions asked to and answered by Jana Renfroe on the same topic. If the line of questioning begins to cross into

privileged boundaries, then counsel for Renfroe should specifically instruct Goodin not to answer questions at that point, as counsel did at Jana Renfroe's deposition.  *See* Fed. R. Civ. P. 30 (c)(2). Apparently, at Goodin's deposition, counsel for Renfroe did not ascertain that privileges were being implicated.  Any other instruction not to answer questions because of a relevancy objection is improper.  *See Gober*, 197 F.R.D. at 520.

Finally, the Rigsbys seek sanctions for Renfroe's conduct during Goodin and Cantrell's depositions.  While the instructions given by counsel for Renfroe may have been improper, they do not give rise to the draconian sanction of dismissal.  *See United States v. Certain Real Prop. Located at Route One, Bryant, Ala.*, 126 F.3d 1314, 1317 (11th Cir. 1997) (noting that dismissal of a claim is to be used in the district court's discretion as a discovery sanction of last resort for conduct that is willful or in bad faith).  As per the agreement of the parties, Renfroe shall bear the costs of the re-deposition of Goodin and Cantrell.  As the award of sanctions is within the court's discretion, the court elects not to impose upon Renfroe any additional sanctions beyond the costs and expenses of the additional depositions.  The Rigsbys' motion to compel is **GRANTED** and Renfroe's motion for a protective order is **DENIED.**

**Renfroe's Motion to Compel Discovery Responses (Dkt. No. 284) and Non-party White Arnold and Dowd's Motion to Quash (Dkt. No. 304)**

Renfroe has filed a motion to compel discovery responses from the Rigsbys regarding payment of their attorneys' fees and their

income tax records and has served a subpoena on non-party White Arnold and Dowd ("WAD") for discovery relating to the payment of attorneys' fees on behalf of the Rigsbys.  To repeat what was said in open court at the June 4, 2008 hearing, Renfroe's motion to compel evidence of the Rigsbys' attorneys' fees and any payment of them is **DENIED**.  As such, WAD's motion to quash Renfroe's subpoena for this information is **GRANTED**.

Renfroe's motion to compel also requests that the court order the Rigsbys to produce tax returns and documents evincing their income for 2007.  Insofar as Renfroe's motion seeks the production of these tax records, the motion is well-taken and is **GRANTED**.  The Rigsbys are **ORDERED** to produce these records within **TEN (10) DAYS** from the date of this order.

**Renfroe's Motions to Quash the Rigsbys' Subpoena for a 30(b)(6) Deposition of State Farm (Dkt. No. 312) and to Quash the Rigsbys' Subpoena for Documents and for Production from State Farm (Dkt. No. 313)**

The Rigsbys have served subpoenas on non-party State Farm Fire and Casualty Company ("State Farm") for a Rule 30(b)(6) deposition and for documents and production.  These subpoenas were served on State Farm in Illinois, became the subject of a federal proceeding there, and were eventually transferred to this court.  Although the subpoenas were served on the non-party State Farm and although State Farm has unresolved objections and motions in a separate case regarding these subpoenas, Renfroe has now moved to quash portions of them in this proceeding.

The Rigsbys initially served these subpoenas on State Farm in November 2007. Renfroe was made aware of these subpoenas, at the latest, on November 30, 2007 when State Farm filed its objections to the subpoenas in the Illinois court and served them on Renfroe. While Renfroe did file a brief in support of State Farm's motion for protection from the Rigsbys' subpoenas in the Illinois court, Renfroe made no effort to quash the subpoena there. Renfroe's motion to quash was filed in this court on May 23, 2008, nearly six months after it was made aware of the subpoenas at issue.

Rule 45 provides that an issuing court may quash a subpoena "on *timely* motion." Fed. R. Civ. P. 45(c)(3)(A) (emphasis added). Professor Moore's treatise states,

> [a]ny motion seeking to quash... a subpoena must be "timely." Because Rule 45 does not provide any specific time period for bringing a motion to quash... courts have required that the motion be made before the date specified by the subpoena for compliance. If the stated compliance time is unreasonably short, it may also be unreasonable to require a motion to quash... to be filed within that time. In those circumstances, a motion filed beyond the compliance date may be timely.

9 *Moore's Federal Practice* § 45.50[1] (3d ed. 2008). Here, the Rigsbys requested that State Farm comply with their subpoena for a 30(b)(6) deposition on December 14, 2007, and respond to their subpoena for documents on December 3, 2007. Even if a few weeks or days was an "unreasonable" time in which Renfroe could have filed a motion to quash, a motion filed nearly six months later cannot be considered timely. In *Sterling Merchandising v. Nestle*, 470 F. Supp. 2d 77, 85 (D.P.R. 2006), the court denied a motion to quash

7

because it was filed more than three months after the date the subpoena was served and more than two months after the date specified for compliance. That court also noted that other courts have required that a "timely" motion to quash be made within fourteen (14) days after service of the subpoena, in keeping with the time limits specified in Rule 45(c)(2)(B). *Id.* As in *Sterling*, here, under either theory, Renfroe's motions to quash are certainly untimely. *See also United States ex rel. Pogue v. Diabetes Treatment Cts. of Am.*, 238 F. Supp. 2d 270, 278 (D.D.C. 2002) (denying a motion to quash and finding that filing such a motion both three months and ten months after the date specified for compliance is not timely within the meaning of Rule 45).

Even if Renfroe's motion to quash had been made in a timely fashion, it would have been denied in large part because Renfroe lacks the requisite standing to seek the quashing of the subpoenas. Professor Moore's treatise specifies,

> When a subpoena is directed to a nonparty, any motion to quash... generally must be brought by the nonparty. In particular, a party to the action does not have standing to assert any rights of the nonparty as a basis for a motion to quash... If, however, a party claims a personal right or privilege regarding the production or testimony sought by a subpoena directed to a nonparty, the party has standing to move to quash.

9 *Moore's Federal Practice* § 45.50[3] (3d ed. 2008). Nearly all of Renfroe's objections to the Rigsbys' two subpoenas are based on its contention that the requests are vague, overbroad, and irrelevant. Because these objections are not based on any right or privilege of

8

Renfroe that is being invaded by the discovery request, Renfroe has no standing to challenge the subpoena, and its motion must be denied. *See, e.g., Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 685 (D. Kan. 1995) (finding that the defendant had not made the requisite showing of an invasion of a right or privilege sufficient to confer standing to file a motion to quash a subpoena served on a nonparty); *Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 695 (D. Nev. 1994) (denying plaintiff's motion to quash a nonparty subpoena based on the subpoena's vagueness and overbreadth because the plaintiff did not have standing because the information sought was not privileged or protected as to the plaintiff).

Renfroe's entire motion to quash relating to the 30(b)(6) deposition (Dkt. No. 312) is based on the alleged irrelevance of the challenged topics to the claims and defenses at issue in this case. Nowhere in that motion does Renfroe assert that the subpoena invades a right or privilege of its own. As a result, Renfroe does not have standing to move the court to quash the subpoena, and Renfroe's motion is **DENIED**.

In Renfroe's motion to quash portions of the subpoena to State Farm for the production of documents, the vast majority of Renfroe's objections to the Rigsbys' requests are based on vagueness, overbreadth, and irrelevance. As previously stated, these objections do not implicate a right or privilege of Renfroe sufficient to confer standing to file this motion. In Renfroe's

objections to Subpoena Exhibit A, Nos. 1, 3.i., and 3.m., in addition to making these objections, Renfroe also argues that the subpoena will pose an undue burden and expense on Renfroe. This argument does not implicate a personal right or privilege of Renfroe. Rule 45(c)(3)(A)(iv) provides that a subpoena may be quashed because it poses an undue burden; however, in this case, the subpoena has been issued to State Farm, not to Renfroe. It is State Farm that must produce the documents, and it is only State Farm to which this subpoena may pose an undue burden. No right or privilege of Renfroe is implicated in these three requests, and thus Renfroe has no standing to object to them. Finally, Renfroe does assert that Subpoena Exhibit A, Nos. 13 and 17 pose an invasion of a privilege attached to a joint defense or interest in other litigation. However, as previously stated, this complaint is untimely. Because Renfroe's failure to object in a timely manner has waived any objection it may personally have, *see* Fed. R. Civ. P. 45(c)(3)(A)(iii), Renfroe's motion to quash the Rigsbys' subpoena to State Farm for certain documents is **DENIED**. State Farm's motions in the case transferred to this court from Illinois remain for decision.

### Rigsbys' Motion to Compel the Deposition Testimony of David Randel and John Dagenhart and for Sanctions (Dkt. No. 321)

On May 15, 2008, the Rigsbys deposed David Randel, a State Farm manager, and John Dagenhart, a State Farm team manager, both of whom worked with the Rigsbys in Mississippi following Hurricane Katrina.

During their depositions, counsel for State Farm and Randel's private counsel instructed Randel and Dagenhart not to answer certain questions counsel for the Rigsbys posed. There are four different subjects about which counsel for State Farm and Randel's private counsel instructed Dagenhart and/or Randel not to answer, and these four topics are the subject of the Rigsbys' motion to compel deposition testimony and for sanctions.

First, counsel for State Farm instructed counsel for the Rigsbys not to show Dagenhart certain restricted documents that the Rigsby sisters obtained as a result of their employment with Renfroe, that give rise to this matter, and that are the subject of this court's injunction and numerous protective orders (the "documents"). At the request of the Rigsbys, much of the protective measures surrounding the documents were put into place in part to prevent anyone at State Farm from gaining knowledge as to their contents. Later protective orders expanded the scope of who may examine the documents, permitting deponents and counsel for deponents to examine the documents when presented as an exhibit in a deposition. However, this scope is limited in that anyone who has obtained access to the documents may not later disclose their contents to anyone who is not otherwise permitted to view them.

These convoluted rules have created and continue to create serious problems for Dagenhart and for counsel for State Farm. If, in accordance with the protective order, they gain access to the documents within the confines of the deposition, they must later, in

11

every other context, refrain from disclosing the contents of the documents to anyone else at State Farm.  This could impede Dagenhart's duty to speak truthfully under oath in other litigation and could especially damage the ability of counsel for State Farm to fully and fairly represent State Farm in other proceedings, implicating rules of professional conduct.

As a result, modification of the protective order is once again necessary.  Because it is in the Rigsbys' interest that the court has previously prevented State Farm from accessing the documents and because it is the Rigsbys who are wanting to disclose the contents of certain documents to Dagenhart and to counsel for State Farm, should counsel for the Rigsbys choose to show Dagenhart and counsel for State Farm any of the restricted documents upon the re-deposition of Dagenhart, both Dagenhart and counsel for State Farm are hereby permitted to disclose the contents of the documents to others at State Farm within the confines of Dagenhart's employment and counsel's attorney-client relationship. That is, if the Rigsbys choose to allow Dagenhart and counsel for State Farm to access any of the protected documents, Dagenhart and counsel for State Farm may then disclose the contents of the documents they saw, but **only** in the context of Dagenhart's employment with and/or capacity as a representative of State Farm and of counsel's attorney-client relationship with State Farm. Thus, insofar as the Rigsbys' motion to compel requests that Dagenhart be shown the documents and submit

12

to questioning regarding the documents, the Rigsbys' motion is **GRANTED**.

Second, the Rigsbys have moved to compel Randel and Dagenhart to answer questions regarding their knowledge of multiple engineering reports or of fraud perpetrated on State Farm policyholders. State Farm argues that any such inquiry is not properly posed to either Randel or Dagenhart and should instead be asked of State Farm's 30(b)(6) corporate representative. The Rigsbys argue that any such line of questioning is proper as long as the question only seeks knowledge that is personal to Randel or Dagenhart. The court has no problem with this line of questioning as it relates to the personal knowledge of Randel and Dagenhart, and thus the Rigsbys' motion is **GRANTED** on this ground.

Third, the Rigsbys seek to compel Randel and Dagenhart to answer questions about the existence of an investigation by State Farm into possible fraud on policyholders; who, if anyone, was interviewed during any such investigation; and what, if any, disciplinary actions were taken as a result of any such investigation. State Farm opposes the Rigsbys' motion, claiming that an investigation did occur but that it was undertaken upon the advice of counsel, rendering information regarding the internal investigation privileged. While the court agrees that the identity of any individuals questioned during the investigation, the results of the investigation, and any action taken as a result of the

investigation are all privileged information and therefore are not discoverable, the court does not believe that all questioning regarding the investigation is barred. The Rigsbys may not question Randel or Dagenhart regarding the identity of any individuals who were interviewed or who participated in the investigation, but the Rigsbys may ask either deponent to identify individuals who may have knowledge of the investigation. *See, e.g., Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 231 (E.D.N.Y. 2007) (finding that a party may not obtain discovery to determine who a party, its counsel, or its agents chose to interview in its preparation for litigation but finding that the mere discovery of an individual with knowledge about the subject of the litigation does not violate the work-product doctrine); *Morgan v. City of New York*, No. 00-9172, 2002 WL 1808233, at *3 (S.D.N.Y. Aug. 6, 2002) (same); *Seven Hanover Assocs. v. Jones Lang LaSalle Americas, Inc.*, No. 04-4143, 2005 WL 3358597, at *1 n.1 (S.D.N.Y. Dec. 7, 2005) (same). As a result, the Rigsbys' motion to compel is **DENIED** as to the identification of individuals interviewed during State Farm's investigation and any disciplinary measures taken as a result of the investigation but is **GRANTED** as to the discovery of any individuals who may have knowledge of the investigation.

Finally, the Rigsbys have moved to compel Randel to answer questions about whether he had previously invoked his Fifth Amendment privilege in response to deposition questioning relating

14

to allegations of fraud on policyholders. Both counsel for Randel and counsel for State Farm instructed Randel not to answer this line of questioning from the Rigsbys. Randel responded separately to the Rigsbys' motion, arguing that he is not at liberty to discuss this previous testimony because it is under seal. The deposition testimony in question was taken in 2006 in *McFarland v. State Farm*, No. 06-932, a matter filed in the Southern District of Mississippi that was settled in March 2007. Plaintiffs in another Mississippi case, *McIntosh v. State Farm*, No. 06-1080, attempted to unseal this deposition, but the court there (the same court in *McFarland*), found that *McFarland* deposition in which Randel invoked his Fifth Amendment rights should remain under seal. This court, long a proponent of an individual's Fifth Amendment right against self-incrimination, agrees with the Mississippi court. Therefore, the Rigsbys' motion to compel is **DENIED** as to questions about any previous invocation of Randel's Fifth Amendment rights in deposition testimony.

The Rigsbys also seek sanctions on counsel for State Farm for instructing Dagenhart and Randel not to answer questions in their depositions. Because counsel for State Farm was substantially justified in instructing Dagenhart and Randel not to answer certain questions based on issues regarding privilege and the extent of this court's orders, no sanctions may be properly awarded. Insofar as the Rigsbys' motion to compel requests sanctions on State Farm, the

motion is **DENIED**.  However, the court **ORDERS** that State Farm shall bear the costs and expenses necessary to re-depose Randel and Dagenhart on the topics on which the Rigsbys' motion to compel has been granted.

## Conclusion

Based on the foregoing, the Rigsbys' motion to compel (Dkt. No. 283) is **GRANTED,** and Renfroe's motion for protection (Dkt. No. 311) is **DENIED**.  Renfroe's motion to compel (Dkt. No. 284) is **GRANTED IN PART** and **DENIED IN PART**.  WAD's corresponding motion to quash (Dkt. No. 304) is **GRANTED**.  Renfroe's motions to quash (Dkt. Nos. 312 and 313) are **DENIED**.  The Rigsbys' motion to compel deposition testimony (Dkt. No. 321) is **GRANTED IN PART** and **DENIED IN PART**.  Insofar as the court has granted motions to compel additional deposition testimony, the costs and expenses of the re-depositions shall be borne by the party opposing the motion.  Otherwise, all motions for sanctions are **DENIED.**

**DONE** this 24th day of June, 2008.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE