IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

E.A. RENFROE & COMPANY, INC.,     }
                                  }
    Plaintiff,                    }
                                  }      CIVIL ACTION NO.
v.                                }      06-AR-1752-S
                                  }
CORI RIGSBY, et al.,              }
                                  }
    Defendants.                   }

**MEMORANDUM OPINION**

After an unsuccessful mediation attempt, the court again has under submission several long-pending motions in the above-entitled case. As now configured, the complaint of plaintiff, E.A. Renfroe & Company, Inc. ("Renfroe"), has two aspects. First, Renfroe claims that defendants, Cori Rigsby and Kerri Rigsby ("Rigsbys"), breached their employment agreement. Second, Renfroe claims that the Rigsbys violated the Alabama Trade Secrets Act. Both of these claims arise from the Rigsbys's accessing and copying documents of Renfroe's client, State Farm Insurance Company, and sharing the documents with Richard Scruggs, a lawyer who, in turn, shared them with the Attorney General of Mississippi and employed them in broad-ranging litigation in which Renfroe was and is implicated.

Renfroe moves for partial summary judgment on the question of the Rigsbys's liability for breach-of-contract. The Rigsbys have a counter-motion contending that the undisputed facts demonstrate that there was no breach-of-contract. Renfroe also has a motion for partial summary judgment that the Rigsbys are liable for a

violation of the Alabama Trade Secrets Act.  The Rigsbys have a counter-motion contending that there is no factual basis for such a claim.  As it must under Rule 56 analysis, the court will limit itself to the undisputed facts relevant to these motions.

## Breach-of-Contract Claim

When, at the beginning of the case, the court granted a preliminary injunction mandatorily enjoining the Rigsbys to return the stolen documents, the court necessarily found that there was, in fact, a binding contract between Renfroe and the Rigsbys, that the contract contained a confidentiality agreement, and that there was a substantial likelihood that Renfroe would prevail on its claim that the confidentiality agreement had been breached.  There was then, and there is now, no dispute about the meaning of the operative words in the employment agreement.  The import of those words not only was addressed by this court when the preliminary injunction was issued, but the same words were analyzed by the Eleventh Circuit in its opinion affirming this court's grant of preliminary injunction.  The Eleventh Circuit readily found that the contract was valid and enforceable and that the Rigsbys's proposed excuses for breaching it were ineffectual.  After pointing out the importance of the confidentiality provision, and of the Rigsbys's written acknowledgment that Renfroe would suffer "immediate and irreparable damage and loss" upon any breach of that provision, the Eleventh Circuit held:

> **Having concluded that Renfroe is substantially likely to prevail on its breach-of-contract claim**, we turn briefly [etc.]

*E.A. Renfroe & Co., Inc. v. Moran*, 249 Fed. Appx. 88, 92 (11th Cir. 2007)(emphasis supplied).

The simple and straightforward facts relevant to the breach-of-contract claim are (1) that there was a binding contract between the parties; (2) that the contract included a provision that expressly precluded the Rigsbys from sharing Renfroe's confidential materials with outsiders; and (3) that the Rigsbys, as Renfroe's employees, flagrantly violated the agreement by stealing and sharing confidential documents.  These facts are as clear now as they were when both this court and the Eleventh Circuit found a substantial likelihood of success on the breach-of-contract claim. This court now substitutes for the words "substantial likelihood of success" the word "**success**".

The Rigsbys have now added facts that they contend preclude any claim of breach-of-conduct.  In their motion for summary judgment on the breach-of-contract claim, they argue:

> (1) Since the Court entered a preliminary injunction removing the claims documents from the possession of the Rigsbys and their lawyers, a federal court in Mississippi has unsealed the Rigsbys' *qui tam* complaint asserting a False Claims Act claim against State Farm, Renfroe, and others and describing the claims documents that would be the subject of the permanent injunction sought by Renfroe. The Rigsbys had a right under federal law to take and use the claims documents in connection with the *qui tam* case, and they have a legal right to have and use those

>     documents in that case now and in the future.
>     Federal public policy reflected in the False
>     Claims Act, by virtue of the Supremacy Clause,
>     preempts state contract law that would hinder
>     an employee providing evidence of fraud on the
>     United States to the Department of Justice
>     (DOJ) or from using that evidence to prosecute
>     a claim as a *qui tam* relator on behalf of the
>     United States. In short, Renfroe cannot
>     invoke state law as a basis for stripping *qui
>     tam* relators of their proof.
>
> (2) Once the *qui tam* complaint was filed in April
>     2006, disclosure to the public and to State
>     Farm policyholders of the documents and the
>     fraud they prove was inevitable; indeed, it
>     has occurred. The documents are not
>     "confidential information," a term defined in
>     the employment agreement. They are "public"
>     or "in the public domain," and no injunction
>     can be effective to remove the documents from
>     public view or otherwise to make them
>     confidential.
>
> (3) The contracts on which Renfroe sues do not
>     forbid the Rigsbys from disclosing the
>     existence of fraud or crime with respect to
>     the handling of claims on State Farm policies.
>     In any event, under widely-recognized public
>     policy, the contracts cannot be so interpreted
>     or applied.

This court has already made clear its belief that the pendency of the *qui tam* case in which the Rigsbys are *relators*, and which was filed in April 2006 without Renfroe as a defendant, did not authorize the *relators*, while employed by Renfroe, to steal State Farm documents from Renfroe, whether the documents were thereafter used to enhance their already pending *qui tam* case, or for litigation in which State Farm insureds were plaintiffs represented by *relator*s' employer, Scruggs, or for both purposes. This court

4

has been cited no authority for the proposition that *qui tam relator*s can, while blowing the whistle, conduct a second-story job without subjecting themselves to possible criminal sanctions and/or to civil liability for conversion or for breach of a confidentiality agreement. Being a self-appointed representative of the United States does not commission the *relator* to conduct clandestine or illegal operations in furtherance of a pending *qui tam* action. When this theft occurred, the United States had not intervened in the *qui tam* case, and, as far as the record reflects, still has not intervened. In other words, these *relator*s assumed considerable risk when they unilaterally decided that their contractual obligation to their employer gave way to a higher obligation to expose fraud and, inadvertently, to get handsomely paid for it under the sharing provisions of the False Claims Act. If the United States had formally deputized the Rigsbys to steal documents, an entirely different problem would be presented.

Although Renfroe has withdrawn any claim for compensatory damages for loss of good will, and has foregone a claim for lost income, it has not given up its claim for the attorneys' fees and expenses it incurred in the litigation spawned by the Rigsbys "data dump" weekend. Any recovery of Renfroe's said legal expenditures will, of course, be reduced by the $65,000 already paid by the Rigsbys to compensate Renfroe's attorneys for obtaining compliance with the preliminary injunction.

Whether Renfroe can recover from the Rigsbys their ill-gotten gains in the form of the substantial consulting fees received from Scruggs need not be determined today. At this juncture, the only question is: "Was there a breach-of-contract that potentially caused Renfroe compensable damage?" The answer to this question is "Yes", meaning that Renfroe is entitled to summary judgment on the simple question of liability by the Rigsbys for breach-of-contract. The Rigsbys's counter-motion, making the same arguments they made to this court and to the Eleventh Circuit in defense of the breach-of-contract claim (except for their additional *qui tam* argument), is due to be denied. Renfroe will be put to the proof on damages.

### The Alabama Trade Secrets Act Claim

There are cross-motions for partial summary judgment on Renfroe's claim that the Rigsbys violated the Alabama Trade Secrets Act ("ATSA"), Ala. Code §§ 8-27-1, *et seq.*, by disclosing documents illegally accessed from the computers of State Farm, the customer of Renfroe. Renfroe's ATSA claim is plagued with problems. The court will address them not in the order of their importance to the court's decision.

First, the court is not convinced that ATSA was designed to cover a fact situation, or a document theft, like this one. The subject confidentiality agreement created an obligation to maintain secrecy with respect to confidential materials, but were State Farm's documents Renfroe's "trade secrets" as that term is used in

the Alabama statute?  The means and methods by which State Farm and its contractors went about adjusting claims might be characterized as "trade secrets", that is, if they are any different from the methods and procedures used in the insurance adjusting industry generally.  Renfroe has not satisfied the court by undisputed evidence that the methods and procedures it employed in serving State Farm and/or its other casualty insurance clients, were so unique as to meet the definition "trade secret".

Second, the Rigsbys assert that Renfroe lacks standing to assert a claim under ATSA because Renfroe did not own the stolen documents and, therefore, did not own any "trade secrets" contained within them.  Only a very few of the documents issued pertain to Renfroe, as distinct from State Farm.  Less than 25 discrete documents out of the thousands of stolen documents are fee agreements.  They are over ten years old and are not currently in effect.  Renfroe argues that it was the bailee of the documents and, in that capacity, has standing.  Whether actual ownership is required to confer standing to make an ATSA claim does not have a clear answer, either in Alabama or Mississippi, the two potentially relevant jurisdictions.  If standing were the dispositive question, and if Alabama law applies, this would be a good question to certify to the Supreme Court of Alabama under Rule 18.  This court has serious doubts about Renfroe's standing under the ATSA.

The Rigsbys next argue that ATSA did not govern their conduct

7

because what they did undisputedly took place in Mississippi, and that ATSA does not apply extra-territorially. Renfroe argues that the employment contract contained a choice-of-law provision designating Alabama law as the controlling law, but the Rigsbys respond by pointing out that choice-of-law provisions do not apply to statutory torts and that the choice-of-law provision does not apply to the conduct complained of. In Alabama, the choice-of-law for tort claims is *lex loci delicti*. *Middleton v. Caterpillar*, 979 So. 2d 53, 58 (Ala. 2007) (citing *Fitts v. Minnesota Mining Mfg. Co.,* 581 So. 2d 819, 820 (Ala. 1991)). The substantive law applicable to a tort claim is the law of the place where the tortious conduct occurred. *Id.* Here, the wrongful conduct took place entirely in Mississippi. There is extensive case law holding that for the tort of misappropriation of trade secrets, the tort occurs where the misappropriation occurs. *See Manuel v. Convergys Corp.,* 430 F.3d 1132, 1140 (11th Cir. 2005)(citing *Salsbury Labs., Inc. v. Merieux Labs., Inc.,* 735 F. Supp. 1555, 1568 (M.D. Ga. 1989)); *Bates v. Cook, Inc.*, 615 F. Supp. 662, 675-76 (M.D. Fla. 1984)(citing a string of cases from other jurisdictions supporting this interpretation of the *lex loci delicti* principle in misappropriation cases). In this case, the *loci delicti* is Mississippi. Although there is no case law interpreting Alabama law that precisely reaches this conclusion, courts interpreting Alabama law have generally concluded that the injury occurs where

the conduct giving rise to the right to sue occurs.  In this case, that would be Mississippi.

The court finds that there is no extra-territorial reach for ATSA, and that the mere fact that the Rigsbys were employed by a company with its principal place of business in Alabama cannot lead to the conclusion that the Rigsbys's conduct in Mississippi is governed by an Alabama law that may or may not proscribe their conduct.

The ATSA claim is largely redundant to the breach-of-contract claim.  The only reason for Renfroe to have invoked ATSA is that Ala. Code, § 8-27-4, makes it possible to recover not only actual damages but disgorgement, attorneys' fees and exemplary damages if the ATSA violation is willful and malicious.

For these separate and several reasons, the Rigsbys's motion for partial summary judgment on the ATSA claim will be granted, and Renfroe's counter-motion will be denied.

**Objections and Motions to Strike Evidentiary Materials**

Because the evidentiary materials to which plaintiff and defendants have objected and have moved to strike have not been used by the court in reaching its conclusion under Rule 56, they are moot, and will be so designated by orders separately entered. The same is true of the entire discovery dispute transferred from Illinois, all of which relates to the ATSA claim.

**Renfroe's Motion to Reconsider the Granting of
the Rigsbys's Motion for a Jury Trial**

When this court granted the Rigsbys's belated motion for trial by jury, it overlooked the provision in the employment agreement by which the Rigsbys waived their right to jury trial on all issues arising out of the employment relationship.  Although this court remains enamored of the Seventh Amendment, if this particular employment agreement is enforceable in other respects, it must be enforced in all respects.  Renfroe's motion will be granted, and the case will proceed as a bench trial.

Separate orders consistent with this opinion will be entered.

DONE this 29th day of October, 2008.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE